JULIUS FISCHER, as Administrator of the Estate of FANNIE FISCHER, Deceased, et al., Plaintiffs, *v.* CITY OF NEW YORK, Defendant.

Supreme Court, Trial Term, Queens County, January 5, 1955.

*George Ammerman, Herbert L. Fine* and *Irving Mariash* for plaintiffs.

*Adrian P. Burke, Corporation Counsel* (*Cornelius F. Collins, Jr.,* of counsel), for defendant.

PETTE, J. In this action to recover damages for personal injuries sustained by plaintiffs' intestate and for medical expenses and loss of services by her husband, the cause was tried by the court without a jury.

On the morning of January 15, 1951, the intestate, then seventy-six years of age, was injured when she fell while walking on a public sidewalk on the east side of Vernon Avenue, some twenty-five feet south of 40th Avenue, Long Island City, New York. She was removed by an ambulance to St. John's Hospital, Long Island City, where she stayed for about an hour and a half. She was then taken to the Metropolitan Hospital on Welfare Island, where she remained for fourteen months until her death on March 13, 1952. There is no question that the intestate sustained a fractured right hip as a result of the

accident, which kept her hospitalized for this long period of time and resulted in medical and hospital expenses aggregating $5,317.47.

The serious question presented for determination is the cause of the accident to which there were no eyewitnesses and as to which the intestate herself could no longer testify at the trial, except by testimony she gave when examined before the comptroller, pursuant to section 93d–1.0 of the Administrative Code of the City of New York. This testimony was received in evidence on behalf of the plaintiffs on the authority of *Rothman* v. *City of New York* (273 App. Div. 780), after it had been duly authenticated by reason of the fact, that for causes for which the plaintiffs could not be blamed, it had never been subscribed by her. (Cf. *Ricker* v. *Daniels,* 263 App. Div. 584, and *Magnus* v. *Magnus,* 54 N. Y. S. 2d 271.)

In the deposition before the comptroller, the intestate testified that while walking on the sidewalk in question, the heel of her shoe was caught in a hole in the sidewalk which caused her to fall and break her right hip. It had been raining the day prior to the accident and all morning on the day of the accident, and the hole in the sidewalk which she described as about a foot long, four inches wide and three inches deep, was partly filled with water. After she fell and started to scream, two men aided her by bringing a box and sitting her on it. Her husband was called and when he arrived, he went to a neighbor's home where an ambulance was called. She did not remember ever seeing the hole in the sidewalk before the accident nor how long it had existed. She admitted that two police cars came, but denied that any police officer questioned her.

The intestate's husband testified that he was at home when he was summoned to the scene of the accident; that when he arrived there, he found his wife lying on the sidewalk with " her feet towards the hole, towards the sidewalk "; that this hole, about a foot long, four inches wide and four inches deep, had a little water in it and he had observed it " about six months or more " prior to the accident.

Rose Morra, the neighbor in whose home the telephone call was made, testified that she ran out to the intestate and found her lying on the sidewalk on her right side. She described the hole in the sidewalk as " long, and a little narrow " and " it was pretty deep " and that the intestate's feet were right near it. She stated that for more than six months prior to the accident she had observed the hole in the sidewalk. She testified also that she called police officers and was present when they arrived

and did not observe them have a conversation with the intestate, although she was there all the time. She did not give her own name to the police officers nor point out the hole in the sidewalk to them. She held Mrs. Fischer's head until the ambulance arrived. She knew that " two men came along and wanted to put her up on a box, and it was pretty high getting her there, that is why I held on to her, to give her support."

The defendant introduced evidence as to oral statements made by the intestate immediately after the accident to a policeman and later to the doctor at Metropolitan Hospital, who, on the admission record, noted in his own handwriting " states that she slipped on a banana & fell on her rt. side." The oral testimony of the doctor and the policeman to whom the intestate made a similar statement, as well as the admission sheet of the hospital and the accident report of the police department, were admitted over objection, on the authority of *Kwiatkowski* v. *John Lowry, Inc.* (276 N. Y. 126). Decision upon plaintiffs' motion to strike out the oral testimony of the doctor and the policeman and the admission record of the hospital, on the ground that such evidence violated the provisions of section 347 of the Civil Practice Act, was reserved. That motion is now denied.

Inasmuch as this was a sidewalk accident case, it does not fall within the purview of the last paragraph of section 347 which was added in 1948 (L. 1948, ch. 705). The theory of the remaining portion of that section and its predecessor statutes " is to render incompetent as witnesses against the representative of a decedent, as to personal transactions with decedent, parties to the action, persons from or through whom title to the subject-matter of the action is derived and persons for whose benefit the action is prosecuted or defended — persons directly interested in the event of the action — and no others." (*Bopple* v. *Supreme Tent of Knights of Maccabees of World,* 18 App. Div. 488, 493.) The testimony of the doctor and the policeman, who testified as to the admissions by the intestate as to how the accident occurred, as well as their written reports of such conversations, was admissible since these persons are not directly or immediately interested in or benefited by the result of this action. (*Pack* v. *Mayor of City of N. Y.,* 3 N. Y. 489; *Matter of Olson,* 119 N. Y. S. 2d 207, 210; Greenfield on Testimony Under § 347, Civ. Prac. Act, §§ 56, 58.)

In the *Pack* case (*supra*), it was held in a suit against a municipal corporation that one of the corporators was not a party within the meaning of section 399 of the Code of Civil

Procedure, the predecessor statute of section 347, so as to be excluded as a witness. In the *Olson* case (*supra*), it was held that one of the employees called by the department of welfare of the City of New York, which was interested in the event, was not thereby disqualified from testifying on behalf of the employer over the objection of the special guardian of the decedent's allegedly incompetent sister that stock in a co-operative apartment house corporation owned by the alleged incompetent had been assigned by her to the decedent prior to death. The foregoing applies with equal force to the testimony of the doctor and the policeman.

Hospital records are admissible in evidence under section 374-a of the Civil Practice Act if found to have been made " in the regular course of any business, and that it was the regular course of such business to make such * * * record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter." (*Meiselman* v. *Crown Heights Hosp.*, 285 N. Y. 389; *People* v. *Kohlmeyer*, 284 N. Y. 366.) It may be argued that it was not the regular course of the doctor's " business " to make a memorandum on the hospital admission sheet as to the manner in which the accident occurred. However, such memorandum was not based upon hearsay statements but upon information given to the doctor by the intestate herself, which he testified he immediately recorded in his own handwriting. Consequently the statement of the intestate thus recorded on the hospital record was admissible as an admission against her interest (*Dougherty* v. *City of New York*, 267 App. Div. 828, affd. 295 N. Y. 786; *Paolantonio* v. *Long Island R. R. Co.*, 274 App. Div. 1063; *Ambrosino* v. *Cie De Navagacao Lloyd Brasileiro*, 267 App. Div. 910), and corroborated the doctor, whose veracity in that respect was challenged at the trial. What has been said here concerning the hospital record applies with equal force to the statement contained on the police blotter as to which a policeman testified, and whose testimony in that respect was likewise challenged by the plaintiffs.

This case is distinguishable from *Cox* v. *State of New York* (282 App. Div. 815), and *Friedman* v. *New York City Omnibus Corp.* (272 App. Div. 265). In the former case, it was held that " Section 374-a does not authorize the receipt into evidence of records giving the version of third persons as to the manner in which an accident occurred." In the latter case it was held that testimony of plaintiff that the intestate had told her at a nearby restaurant to which he walked after the accident that he had been hit by a bus, was inadmissible since such statement

was not part of the *res gestae,* and was inadmissible as narrative of a past transaction.

A police officer of the City of New York testified in the case at bar that he, with his partner since deceased, arrived at the scene of the accident, where they found the intestate sitting on the ground about ten or twelve feet outside the path on 40th Avenue. Both went over and conversed with her. The officer testified: " I asked her what happened, and she said she slipped on a banana peel and fell down. I looked for the banana peel, and it was beyond the curb, on the roadway. I inquired as to how it got there."

He then examined the sidewalk in the area where the intestate fell and found " it was alright. There was no break or anything like that." The police blotter signed by the since deceased officer contains the statement: " While walking along sidewalk stepped on a banana peel falling to sidewalk causing injury. Inspected and found sidewalk in a good and clean condition. To Metropolitan Hos." The officer testified further that he had a recollection of this particular accident not because he had an independent recollection of the intestate's name, but because it was " the only case for eight years where a person fell. This is something very strange." When asked by plaintiffs' attorney " What do you mean, falling? " the officer answered " I mean falling on a banana peel."

The doctor, who took the intestate's history at the Metropolitan Hospital, testified that he inquired of her as to the manner of the happening of the accident and she answered " I slipped on a banana peel and fell on my right side "; that in the course and as part of his duties, he entered, in his own handwriting, a summary of this conversation in the hospital record, to wit: " 76 yr. old W/F states that she slipped on a banana & fell on her rt. side." He testified that this particular case was vivid in his mind " because this individual slipped on a banana peel; and at that particular point people ordinarily would sum up — ' What happened? ' ' Well, she slipped on a banana peel.' "

We thus have the testimony of a police officer and of a physician, the identified signature on the police report of another officer now deceased and a hospital record, all to the effect that shortly after the accident, the intestate stated that she fell because of a banana peel on a sidewalk rather than the claim made in the pleadings and upon the trial, that the accident was due to a hole in the sidewalk which had existed for more than six months prior to the accident. Against that, we have the testimony of the intestate herself some seven months after the

accident, given at a hearing before the comptroller, and the testimony of her husband and the neighbor at the trial. There were no photographs. There were no eyewitnesses and the court can perceive no motive on the part of the police officer or the physician for misstating, shortly after the accident, in their official records, the version of the accident which they personally received from the intestate.

In view of that evidence and all the other surrounding circumstances of the case, this court is constrained to reach the conclusion that the plaintiffs have not established by a fair preponderance of credible proof that this unfortunate accident was caused by a hole in the sidewalk of which the city had constructive notice.

Judgment accordingly is granted in favor of the defendant, dismissing the complaint on the merits. This memorandum constitutes the court's decision within the meaning of section 440 of the Civil Practice Act.