S. Samuel Di Palco, S.
The account of the executrix reports gross assets of less than $20,000 and claims of nearly $185,000. The largest claim is that of the United States based upon deficiency income tax assessments totalling more than $170,000. The United States has filed objections to the account, to payment of certain administration expenses and to the payment of unpreferred claims.
The objections to the payment by the executrix of the unpreferred claims are sustained. Letters testamentary were issued on April 24, 1958. The first notices of claims were filed by the Government on August 6, 1958. On October 24, 1958, a notice of claim in excess of $58,000 was served. There is some dispute as to whether it was served personally upon the executrix or upon the attorney. In any event, it is certain that she had knowledge of claims by the Government even in advance of the filing of the notices of claim. The certified public accountant, who was retained to assist the executrix in defending against the tax claims and whose fees have been objected to by the United States, testified that he was retained in May, 1958 to represent the estate with respect to the audit by the Internal Revenue Service of income tax returns that had been filed by the decedent prior to his death. Moreover, on the hearing counsel conceded that “ sometime in August, 1958, after August 6, 1958, the executrix learned the Government had some kind of tax claim against the estate of the decedent ”. She had an accountant and attorneys familiar with the tax claim. Thus it is not important whether the various notices of claim were actually served per *195 sonally upon the executrix or upon her attorney or accountant. Having actual notice that the Government was asserting a claim for prior income taxes, she was bound to make some inquiry prior to making distributions. She cannot assert that distribution was made “ in good faith ” prior to the presentation of the final deficiency assessment because she had sufficient notice of facts to require an inquiry by her prior to distributing the assets. (SCPA 1802 and Matter of Seife, 37 Misc 2d 863.) The executrix will accordingly be surcharged in the amount hereinafter stated of the general claims paid in violation of the preferential rights of the United States, with credit for any sums reimbursed to the estate by the claimants.
The United States presented a supplemental petition, on notice to all of the interested persons, to require the claimants to refund to the executrix for payment to the United States the amounts paid to them respectively. SCPA 2215 provides that if “ any creditor or person interested has received estate assets in excess of the amount determined on the settlement of the account to be due him the court is authorized to direct in the decree repayment by him of the excess to the fiduciary of the estate or otherwise as justice shall require ”. One of the claimants has voluntarily refunded the amount paid to it; some have defaulted; two of the payees have contested the demand that they be compelled to refund the amounts received by them.
The defenses raised by the two contesting respondents are in all respects similar. Both claim that (1) the funds were funds of a partnership and not of the estate and that they were paid for a partnership obligation; (2) the Statute of Limitations bars any proceeding to compel a refund; (3) that the demand for a refund is barred by laches. There are other arguments which challenge the tax assessments, but this court has no jurisdiction to review the assessments made by the Federal taxing authorities.
The decedent practiced law under his own name. Respondent Sidney Schiffman is an attorney who was associated with the decedent in the practice of law. Respondent Harry Levy was an employee. An agreement was executed by the decedent and Schiffman on October 13, 1953. It does not use the words “ partner ” or “ partnership ”, and is- lacking in many of the features of a partnership agreement. This document was not the product of unskilled laymen; it was drafted and executed by the two attorneys. Presumably both attorneys were familiar with all of the elements of a partnership and the legal principles governing its formation and operation and were able to express in writing their intent with respect to this transaction.
*196 Under the terms of the agreement the parties did “ agree to. engage in the practice of law, the proceeds of which are to be divided 75% to the party of the first part [the decedent] and 25% to the party of the second part [Schiffman] It recited that the arrangement had been in effect and that the present agreement was an extension, with certain modifications, of an agreement made in 1945. The agreement continues: ‘ ‘ All legal business in the office of the party of the first part which is now in existence or which may be in existence if the party of the first part shall die, shall be considered the exclusive property of the party of the first part subject to the terms and conditions hereinafter mentioned. * * * For the sake of convenience and in order to obviate accounting and bookkeeping the parties have agreed that the party of the second part shall draw $250.00 weekly and in addition thereto have his income tax and social security paid by the party of the first part, which items as mentioned shall constitute and be in lieu of the 25% profits which the party of the second part has agreed to accept.” (Emphasis added.) The balance of the agreement is concerned with the conduct of the law practice after the death of the decedent and the amounts which Schiffman would be required to pay to the decedent’s wife. The agreement again repeats that any legal business which Schiffman should engage in after the death of the decedent ‘ ‘ is the legal business and practice which the party of the first part died possessed of”. The agreement also contains a provision for payment of a stipulated salary to Mr. Levy, who is described as a faithful employee of the decedent for many years.
It is apparent that the agreement was one for the employment of Schiffman and for the payment of stipulated sums to the decedent’s widow after his death. There was no obligation on the part of Schiffman to pay any of the expenses of the business or to share in any losses. The agreement to share in the profits was immediately nullified by a provision that he was to be paid and was required to accept stipulated sums in lieu of the share of the profits. The only reference to the expenses and losses of the business was in a paragraph which dealt with the continuance of the law business after the death of the decedent and which provided for the same division of the profits but also required the estate and Schiffman to contribute to the expenses of the business in proportion to their share of the profits.
Moreover, after the death of the decedent, Schiffman made a claim against the estate for moneys which he claimed were due to him. The widow, in her testimony at the hearing in this proceeding, was not aware that Schiffman was a partner of the *197 decedent but believed that he was an employee. On advice of counsel, she paid Schiffman $3,500 which is the exact amount of the claim listed in Schedule D of the account and is characterized as a claim for “ services”.
The respondent now contends that payment was in reality a compromise of his claim of a right to continue the law practice as surviving partner. First, the payment is not listed as a compromise of the claim but rather as payment in full. Secondly, there is no basis in this record for inferring that the estate intended to gain any financial benefit from purchasing the respondent’s interest in a partnership or in winding up the affairs of a partnership. The court finds there is no merit in the suggestion that the payment was in compromise of a claim arising out of a partnership.
It was conceded that the practice of law by the decedent was carried on under his own name and that there was only a single bank account which was in the individual name of the decedent. The payments were made by the executrix out of this individual bank account. The court holds that there was no partnership between the decedent and Schiffman and that the payment was made from assets which belonged to the decedent and which were part of the assets of the estate. The payment was made in violation of the preferential right of the United States.
The ruling with respect to the respondent Schiffman applies equally to the payment to the respondent Levy. He was an employee of the decedent. While he had a valid claim against the estate, it was subject to the preferential right of the United States.
Both respondents argue that the Statute of Limitations has run against the right to demand a refund. Respondent Levy was paid $2,500 on June 27, 1958 and respondent Schiffman was paid $3,500 on August 1, 1958. The account of the executrix has not yet been judicially settled. In the course of the proceeding the United States obtained supplemental citations. Its petition was filed on July 15, 1966, more than six years after the payments were made. The respondents claim that CPLR 213 (subd. 6) bars recovery after more than the lapse of six years in “ an action based upon mistake ”.
The right of a fiduciary to compel a creditor to refund an overpayment was recognized by the courts long before the enactment of statutory authority therefor. (See 3 Woerner, The American Law of Administration [3d ed.], § 520, pp. 1797-1798.) The liability to refund an overpayment was considered in some detail by the Court of Appeals in Woodruff v. Claflin Co. (198 N. Y. 470). The court said (pp. 473-474): “ The decisions in *198 other states are conflicting. The doctrine which is supported by the weight of judicial authority, and which, it seems to me, we ought to sanction, may be briefly stated. In the case of the death of an insolvent debtor, the law contemplates equality in the distribution of the proceeds of his estate among his creditors. A creditor who seeks more than his prorata share of the debtor’s property under such circumstances seeks that which does not belong to him, and makes the other creditors poor in proportion. To insist upon full payment from an insolvent estate is dishonest, if the party thus insisting is aware of the insolvency. Hence, whether the overpaid creditor shares the erroneous belief of the administrator that the estate is solvent, or is acquainted with its true condition, he is equally obligated to return the surplus he has received over the dividend to which he was entitled when it has become judicially ascertained that the estate is not large enough to pay all the debts in full; for in the first case both parties act under a mutual mistake of fact, and in the second case there is a wrongful intent on one side and a mistake on the other. The creditor who has received the excess has no right to retain it in equity and good conscience; and the personal representative who has innocently paid such excess may maintain an action to recover it, if he moves seasonably after the ascertainment of the insolvency, and has done nothing which ought to constitute an estoppel in favor of the overpaid creditor.” What is said of a creditor who has received more than his prorata share must be equally true of one who was paid in full but who was not entitled to be paid anything at all until the preferred creditors were paid in full.
The decisions thus make it clear that the theory upon which the action proceeds is a mutual mistake of the parties, or mistake on the part of one and fraud on the part of the other. The statute which authorized the court to order a refund was enacted in 1936 (Surrogate’s Ct. Act, § 267, as amd. by L. 1936, ch. 652), and in its present form is quoted hereinabove (SOPA 2215).
If we assume for the purposes of this discussion that the right to recover would be barred by the same limitation which would bar an action based upon a mistake, the respondents are nevertheless in error in asserting that the present claim would be barred. Prior to the enactment of the CPLR, the limitation for commencing an action based upon mistake was not specifically prescribed in other sections of the Civil Practice Act and thus fell within section 53, which fixed a 10-year limitation for all actions for which no other provision was made. (1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 213.18, p. 2-199.) Under the revised practice, the limitation for such an action is fixed at six *199 years (CPLR 213, subd. 6), but it is also provided that whenever ‘1 a cause of action accrued before, and is not barred when this article becomes effective, the time within which an action must be commenced shall be the time which would have been applicable apart from the provisions of this article, or the time which would have been applicable if the provisions of this article had been in effect when the cause of action accrued, whichever is longer ”. (CPLR 218, subd. [b].) Thus the petition for refund would not have been barred on September 1, 1963 when the CPLR became effective and under the terms of section 218 would not be barred until June, 1968. The petition for refund was filed in July, 1966 and process was served upon both respondents within 60 days thereafter and the running of the statute was thereupon suspended (SCPA 301).
The respondents also contend that the claim for a refund is barred by laches. ‘ ‘ Laches is an equitable doctrine which is applied after viewing all of the circumstances, accompanied by a measurement of the inexcusable delay, the irreversible detriment to defendants, and the nature and degree of the wrong for which redress is sought.” (Reynolds v. Snow, 10 A D 2d 101, 111.) Under ordinary circumstances, an action in equity will not be barred before the time fixed by the Statute of Limitations, but circumstances may be such in a particular case as to make it inequitable to grant the relief after the lapse of a shorter period of time. (2 Pomeroy, Equity Jurisprudence [5th ed.], § 419a.) In Woodruff v. Claflin (198 N. Y. 470, 474, supra) which was decided prior to the enactment of the now applicable statute, the court said that the fiduciary could recover the excess “ if he moves seasonably after the ascertainment of the insolvency, and has done nothing which ought to constitute an estoppel in favor of the overpaid creditor ’ ’. It should be noted, however, that the present statute speaks with reference to the time of the judicial settlement of the account, for it says that where the creditor has received assets 11 in excess of the amount determined on the settlement of the account to be due him ’ ’, the court is authorized to direct payment to the fiduciary ‘ ‘ or otherwise as justice shall require ”. (SCPA 2215, subd. 3.) In any event, the court has considéred the equities and all relevant factors.
The executrix took no steps to account or to close the administration of the estate until compelled to do so, and she did not take the initiative in seeking the refund of the assets. She was in duty bound to act impartially, with due respect to the rights of all of the creditors and may not grant a preference which is contrary to the applicable statute. A surcharge against the executrix will not benefit a creditor unless it is collectible. It *200 was the United States who instituted the proceeding for a refund, not the executrix, but it was acting for the estate generally and was performing a duty wihich was primarily that of the executrix. If she had instituted the proceeding, she would be acting for the benefit of the preferred creditor and by fair implication, SOPA 2215 may be read as authorizing the offended creditor to act himself when the fiduciary is revealing only a passive interest in the administration.
Patently the executrix has been negligent, but it would appear that ignorance rather than malice has been the cause of the errors and inaction. Insofar as the Government is concerned, there has been no inexcusable delay. The investigation of the decedent’s tax returns continued over a period of time. During the course of this inquiry, the executrix signed several tax collection waivers, the last of which appears to have been signed in August, 1964 and which extended the time to begin proceedings to December 31,1966. The final claim for the total tax deficiency was served upon the executrix on December 6,1966. The United States had filed a petition to compel her to account on February 16, 1965 and an order to compel the filing of an account was made in March, 1965. The executrix did not file her account until August 9, 1965, and process was finally returnable on October 22, 1965. The claimant was then in a position to ascertain the financial condition of the estate. After a preliminary hearing on its objections in April, 1966, the Government moved to compel the overpaid creditors to make refund. The accounting of the executrix is still pending before the court. The preferred creditor thus acted without delay after the final tax assessment was made.
Both of the respondents were connected with the decedent’s law practice. Respondent Schiffman represented the executrix at one period of time and, according to the account, has received fees from the estate for legal services. The investigation into the tax returns of the decedent was a matter that came to the attention of the executrix and her advisers from almost the very beginning of the administration of the estate. While neither respondent appears to have been the adviser of the executrix at the time the payments were made, the attorney, at least, must have been aware of the possibility of tax deficiency assessments and of an insolvent estate. He nonetheless pressed his claim as a creditor.
Under all of the circumstances, the defense of laches is overruled. The court directs the respondents to refund the sums received by them from the estate. The court, however, is of *201 the opinion that under the circumstances it would not be equitable to charge the respondents with interest on these sums.
The amount distributed to Flower Fifth Avenue Hospital has been refunded. The claims for refund from Durand-Taylor Co. and from Warner & Birdsall have been withdrawn. The application is granted with respect to New York Telephone Company and Doctor Irving Ariel. The citation was not served upon Doctor Morton Sehwimmer and Doctor David Scherf within the time specified by the statute and the court did not acquire jurisdiction over them.
The executrix, is surcharged in the total amount of the refunds hereinabove directed, subject to credit to her for all sums refunded to the estate, and for the payments to the physicians.
The United States has filed objections to the account. The objections have been withdrawn with respect to the funeral bill, the cost of the burial plot and the counsel fee to the present attorney for the administratrix. The objection to the accounting fees paid to the certified public accountants for services in the tax proceedings in the Tax Court is overruled. The fact that the defense against the tax claim was not ultimately successful, does not bar the executrix from credit for reasonable expenses in investigating the claim and attempting to reduce it. The total fee was $1,500. The accountant expended over 120 hours of services. The court finds the sum paid to be reasonable.
The objections are directed against all legal fees set forth in Schedule C (except the fee for the present attorney for the executrix) and to $75 paid to a handwriting expert. No evidence whatever was offered by any party with respect to these disbursements. Perhaps the litigation with the creditors distracted attention from these items. Moreover, the withdrawal of the claim for refund against Warner & Birdsall (who were never listed as creditors but only under administration expenses paid) may have led the executrix to believe that the objection to these fees was withdrawn. Nevertheless, the Government seeks a surcharge against the executrix for all such fees and expenses.
The burden of proving the reasonableness and necessity of payments on an obligation created after the testator’s death by the fiduciary, rests upon the fiduciary. (Matter of Brodbeck, 123 Misc. 743, 744.) In such instances the fiduciary is really asking to be indemnified or exonerated from liability for an obligation created by him, and it is up to him in the first instance to establish the justice of the payments for which he seeks credit in his account. The rule is thus different from that which applies in respect of an allowed claim, (p. 743).
*202 It would be unreasonable to say that no legal fees at all should have been paid by the executrix and that she should be surcharged for all fees except in the present accounting proceeding. Unless the executrix and the Government, can agree upon total allowable legal fees, the matter will be restored to the calendar, upon request of any party, for hearing on the objections to the legal fees and expert’s compensation reported in Schedule C. The objection is sustained to the reduction of bank balance in the sum of $263.31.
The objection to the payment to the widow of the $1,000 exempt property under section 200 of the Surrogate’s Court Act is overruled. There is no proof of any specific lien against this property prior to the decedent’s death. The objection to the allowance of any commissi on a is sustained. The administration of the estate has been conducted with negligence and indifference, to the prejudice and damage of the preferred creditor. Commissions will be disallowed.
Subject to the right to request further hearing on the issue of administration expenses, a decree may be submitted on notice settling the account accordingly.