S. Samuel Di Falco, S.
This proceeding which bears the title of the accounting proceeding in this matter was instituted by the United States Government under the provisions of SCPA 2215 to recover the sum of $115,400 paid to the decedent’s widow on or about February 29,1956 and the sum of $25,600 paid to the State Tax Commission in partial payment of New York State estate taxes. The final payment to the New York State Tax Commission was made on September 1,1959. The proceeding was instituted in order to obtain at least partial payment of the United States Government’s priority claim for estate taxes in the amount of $180,659 together with interest on $111,500 from August 1, 1964. A judgment in that amount was rendered against the said executors as a result of a surcharge assessed against them by an interim decree of this court dated October 9,1964 entered in the pending accounting proceeding. The basic facts are undisputed and will be briefly recited.
The decedent herein died on January 10, 1955, a resident of New York County. On January 17, 1955, one week later, an agreement and indenture of trust was entered into between the respondent, Dorothy Cook (then known as Dorothy Schmuckler), and the decedent’s sons by a prior marriage, Joseph and Morton *420 Carlin, who were the sole legatees under the decedent’s will and the executors named therein. Under the agreement, the said executors recognized the right and intention of the widow to file a notice of election to take against the provisions of the will pursuant to section 18 of the Decedent Estate Law and provided instead that one third of the decedent’s estate, which she would be entitled to receive as her elective share, was to be held by them (Joseph and Morton Carlin) in trust for the life of the widow and that she would receive therefrom $10,000 annually for her support and maintenance. The income in excess of $10,000 was payable to the trustee’s children.
The decedent’s will was admitted to probate on January 21, 1955 and shortly thereafter the widow, the respondent herein, who had not been represented by counsel when the trust agreement was entered into, repudiated the trust agreement, filed her right of election, and a bitter litigation ensued in connection therewith. This litigation finally ended on February 29, 1956, some 13 months after the admission of the will to probate, when a settlement agreement was entered into between the executors and the widow under the terms of which she agreed to accept the sum of $115,000 in settlement of all her claims against the estate including her right to exempt property and her elective share under the will. The sum of $400 had previously been paid to her by the executors personally in two weekly installments of $200 each pursuant to the prior trust agreement. The parties exchanged releases and on that same day, February 29, 1956, an order of this court was obtained dismissing the widow’s right of election under section 18 pursuant to the annexed stipulation of settlement. The annexed stipulation of settlement referred to the settlement agreement entered into between the parties.
Meanwhile, on February 24, 1955, the United States, through its Department of Internal Revenue, had filed a proof of claim for unpaid income taxes totalling $288,252.76. However, as this item was subsequently paid, the date of this filing is of no significance with respect to the present controversy.
On April 27, 1959 the United States filed its claim for the estate taxes which are the subject of this controversy. There is no claim made that at the time the widow was paid, in 1956, the estate did not have sufficient assets to pay all its debts. It is, in fact, admitted that at all times there was or would have been sufficient assets in the estate to pay all claims, including the Government’s claim, were it not for the misconduct of the executors.
*421 The Government alleges in its affidavits and the memorandum of law submitted in this matter that it had no knowledge of the February 29 agreement, despite the order of Judge Frahkenthaler which was entered in connection therewith, which is a matter of public record and should have put them on notice that there was such an agreement. Nevertheless, it is alleged and not denied that on August 29,1958, the District Director of Internal Revenue sent a letter to the then attorney for the executors wherein the amount paid to the decedent’s widow, Dorothy, was set forth as an item which was allowed as a proper deduction in connection with the proceedings to fix the Federal estate taxes. Thus, we must assume that on that date at least, August 29,1958, the Government had notice of the payment made to the widow. Thereafter, the Government proceeded in its efforts to collect the tax by making demands upon the executors and on March 9, 1961, filed a petition for a compulsory accounting returnable on April 11,1961.
During the course of the Government’s efforts to collect the estate taxes and while the motion to compel an accounting was still pending, the United States Attorney, on October 4, 1961, was personally informed by Morton Carlin, one of the executors, that he had nothing to do with his brother Joseph, that he had no assets, that his and his brother’s funds were all commingled with the estate assets and that no assets of the estate remained. The Government continued to urge the executors to file an account and finally despairing of obtaining voluntary compliance, moved on January 31,1962 to restore the motion to compel the executors to account to the calendar. It is needless at this time to describe the other moves made by the Government in its efforts to collect the taxes which finally resulted in an order entered on November 15, 1962, which adjudged Joseph Carlin guilty of contempt for failing to file such account and gave him 90 days to purge himself of contempt by the filing of the account. Just prior to this, on October 19,1962, the Government had again been informed, this time by Joseph Carlin and his attorney, that the estate’s assets had been dissipated by himself and his brother, Morton Carlin, in unsuccessful business ventures, and that his brother, Morton, was in fact, serving a seven-year prison sentence for grand larceny in connection with certain illegal securities transactions. On November 9,1962 an order fixing New York State estate taxes was signed which showed the gross estate to be in excess of $2,330,000 with a net estate of $804,440.92.
It is obvious from the fact that there are Federal and New York estate taxes due that this was at no time an insolvent *422 estate, in the usual sense, for if it had been there would have been no estate taxes assessable.
On April 23,1963 pursuant to Judge Cox’ order punishing the executor, Joseph Carlin, for contempt, an accounting was filed and that account shows that on that date there should have been available for distribution and payment of all claims a sum in excess of $595,000. As the executors had dissipated the estate assets an interim decree was finally entered on October 9, 1964 surcharging the executors for the unpaid claims for estate taxes due to the United States and granting the United States judgment against the two executors for the sum of $180,634.94 plus interest on $111,500 from August 1, 1964. The decree also granted a surcharge and judgment to the State of New York for $7,277.11 plus interest for delinquent taxes. Unsuccessful attempts by the United States Government to collect the judgment against the executors resulted in the bringing of this proceeding.
We are thus now faced with an attempt by the United States Government to recoup from the decedent’s widow the sum of $115,400 some ll^ years after that sum was paid to her and received by her in good faith in settlement of an action she had instituted against the estate to determine her right of election pursuant to the provisions of section 18 of the Decedent Estate Law.
The citation in this proceeding was served upon the respondent Dorothy Cook on November 6,1967. Concededly the Statute of Limitations applicable to the case at bar is the Federal Statute of Limitations, section 6502 of the Internal Revenue Code, and not the State statute (Matter of Feinberg, 18 N Y 2d 499). The section in question reads in part as follows: “ (a) Length of period. Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun —
“ (1) within 6 years after the assessment of the tax ”.
The important question to determine, therefore, is when the Statute of Limitations started running as to this respondent. There is little doubt that the Government’s action with respect to its efforts to collect the tax from the estate was timely, for the filing of the proof of claim on April 27, 1959 commenced the action against the estate. This respondent, however, was served with no process at that time and had no notice of the proceeding or that the estate was or might be insolvent. The Government by its own admission was advised of the insolvency of the estate by one of the executors on October 4, 1961 and again advised to *423 the same effect by the other executor on October 19, 1962. It had or should have had notice of the payment made to this respondent prior to that time but made no attempt to institute any proceeding against her under the provisions of EPTL 12-1.1 or its predecessor sections in the Decedent Estate Law. This court observed in Matter of Fisch (58 Misc 2d 193), citing as authority Woodruff v. Claflin Co. (198 N. Y. 470, 474), that one must move seasonably after the ascertainment of the insolvency of the estate in order to recover an excess payment. Of like effect is OPLE 206 (subd. [a], par. 1) which states that ‘ ‘ the time within which the action must be commenced shall be computed from the time when the person having the right to make the demand discovered the facts upon which the right depends ”. In the case at bar it is apparent that the Government knew of the payments made to the respondent and other creditors as early as 1959 and knew of the insolvency of this estate arising out of the wrongdoing of the executors on October 4, 1961. As the action against this respondent and the State of New York was not commenced until November 6, 1967, it is the opinion of this court that the present proceeding is barred by the Statute of Limitations.
The right to a refund of moneys paid to a legatee, distributee or a creditor in excess of the sum originally due that person is based in equity and existed long before the enactment of the statutory authority therefor. This statement appears in this court’s decision in Matter of Fisch (supra) and is especially applicable in the case at bar. The theory upon which such an action proceeds is a mutual mistake of the parties or a mistake on the part of one and fraud on the part of the other (Woodruff v. Claflin Co., supra). None of these elements are present in the case at bar. The money paid to the widow in settlement of her elective share of the decedent’s estate was paid and received in good faith at a time when the estate was fully solvent, as it would be today, were it not for the wrongdoing of the executors. As a result of the settlement the widow gave up substantial rights and considerably changed her position. Neither the change of position nor her rights can now be restored to her.
As the court stated in Mills v. Smith (141 N. Y. 256, 262): ‘ ‘ This action is simply an attempt to fasten upon the distributees of testator’s residuary estate the responsibility for the subsequent default of the executors, as trustees for plaintiff’s father. That cannot be done. Where the loss of a fund is due to the waste, or misconduct, of the executor and trustee, he and his estate alone can be looked to. No claim for contribution arises against residuary legatees in such a case. ’ ’
*424 Thus, both on equitable grounds and upon the ground that the action was not commenced against this respondent within the limitations of time set forth in section 6502 of the Internal Revenue Code, the application to compel the respondent Dorothy Cook to repay the sum of $115,400 received by her in 1956 is denied.
The arguments hereinabove set forth apply with equal force to the claim for a refund made against the State of New York. In addition, conceding the Government’s claim to priority under section 191 of title 31 of the United States Code and SCPA 1811 (subd. 2, par. [a]), this court is of the opinion that no recovery can be had from the State of New York unless all general.creditors are first brought in in order to preserve the preferences set forth in SCPA 1811 (subd. 2). Further it is doubtful whether this court has jurisdiction to order the State of New York to make such a refund (Matter of Singer, 14 N Y 2d 611, affg. 19 AD 2d 616).