William W. Serra, J.
The executor herein has filed an account and petition for its judicial settlement. On the settlement, the court has questioned the propriety and indeed the legality of a certain compromise of claim as hereinafter discussed.
In the course of the administration, the executor has compromised, settled and paid one general creditor’s claim in the amount of $810. Under the schedule of administration expenses, other apparent creditors were paid sums which could not exceed $280.54 as general creditor claims. At least some part of these expenses may be properly expenses of administration. The executor in advance of the accounting has also paid or delivered specific legacies totaling $700.
The sum of $10,019.33 was paid to the Commissioner of Social Services of Allegany County under a claim compromised at 50% which the court has questioned, and it now is proposed to pay to the residuary legatee, Salvation Army, the sum of $9,452.69.
The Department of Social Services has filed claims totaling $20,038.66. If all the assets paid to general creditors, or paid or proposed to be paid to legatees were available in the final account, the sum of $22,072.56 would be available to pay the claim of the Department of Social Services. This is more than enough to fully reimburse the County of Allegany Department of Social Services, a preferred creditor.
Upon the submission of the account for settlement, the court on its own motion, questioned the propriety of the settlement with the Department of Social Services and asked for the submission of briefs as to its validity. The attorney for the executor filed a memorandum citing no legal authority. The County Attorney’s Office did not file any memorandum. After the passage of some months, the court directed that a hearing be held for the purpose of showing cause why the court should approve the settlement with the commissioner. At the hearing the attorney for the executor, the Deputy County Attorney, and the attorney for the Salvation Army all stated that they were unable to find any law on the subject. The Assistant Attorney-General, by letter, also citing no legal authority and, representing those beneficially interested on behalf of the residuary charitable corporation, urged that such settlements are routinely made. A letter from the office of the counsel to the Department of Social Services, not a party, but concerned because of State aid involvement, was submitted on *1064 the return date. This letter, by way of informal memorandum, asserted that the Legislature having authorized settlement by the Commissioner of Social Services of claims against proceeds of personal injury actions and proceeds of insurance policies, and having authorized no other settlement, intended to deny the commissioner of the right to compromise any other claims for aid. (See Social Services Law, §§ 104-b, 105.) All parties declined to submit any proofs to the court and submitted to the record.
The questions raised by the arguments of counsel are, the right of the court to challenge the settlement and the right to make the settlement itself. Law on the subject is sparse, but hardly nonexistent. In examining the question here, the court acknowledges the right of an executor to compromise appropriate disputed matters (EPTL 11-1.1, subd [b], par [14]), but is inquiring into the nature of this transaction by reason of its apparent illegality.
A county social services official may assert a claim against an estate for the full amount of the care of a decedent or his wife, as a dependent. As to such claims, the commissioner is a preferred creditor (Social Services Law, § 104). Such a claim is entitled to be paid, therefore, before any general creditors or legatees are entitled to be paid.
The Commissioner of Social Services undoubtedly has some limited power to compromise disputed or doubtful claims. The power to bring a suit or file a claim implies the power to compromise a suit or claim. In Board of Supervisors of Orleans County v Bowen (4 Lans 24, 31), it is stated: "The power to commence and prosecute actions necessarily includes and comprehends the power to finish them, and to determine how far they shall be carried on, and in what manner they may be ended. It includes the power to discontinue the action commenced, upon terms or otherwise, and to agree upon the terms. In short, we see no reason why a corporation of this kind may not settle, compromise or discontinue actions in which it is lawfully engaged as a party, the same as any other corporation through its officers and boards of directors.” While the commissioner certainly would have the power to compromise minor controversial matters, it would seem to be that it would be better practice to submit substantial settlements to the County Legislature for its scrutiny and approval. (See, also, 105 ALR 170, 179.)
*1065 Not even a County Legislature, however, could compromise any and all claims asserted on behalf of the county. It may not compromise an undisputed claim in its favor (People ex rel. Town of Alton v Parker, 231 Ill 478); People v Holten, 287 Ill 225; Getz v City of Harvey, 118 F2d 817). These cases as cited apply to cases in which liability of bonding companies was clear. The liability is not disputed on the record here. In Standart v Burtis (46 Hun 82), the commissioners of the poor obtained an excise tax judgment which they later tried to compromise and collect in part only, although the defendant was pecunarily responsible. The court found, in a taxpayer’s suit, the proposed settlement would be wasteful of city money and enjoined its consummation. In O’Brien v Mayor (40 App Div 331, 333), the court said, "As correctly urged by the appellant, it is beyond the power of municipal officers to make a gift of the moneys or the property of the corporation; and if, upon the facts here appearing, this large amount of money was a mere gift, based on no consideration, the action taken could not and should not receive the sanction of the court.” (See, also, 15 ALR2d 1359, 1385.)
The claims here, fully documented with copies of agency book entries, are for contracted nursing home care, drugs, medical care and hospital expense for the decedent’s wife during his lifetime and for drugs, medical care and hospital expenses for the decedent. All appear to be routinely contracted services, fully documented and disbursed. The justifications for settlement set forth in the account and the stipulation of settlement are: (1) that there is insufficient money to meet the legal obligations of the estate; (2) the problems of evidence in relation to decedents; and, (3) uncertainties of trial; "if the claims were rejected and the claimant was required to prove each and every alleged service and expenditure stated in the claims, and to justify reasonableness, correctness and unavailability of such services by any other method than the usual all-inclusive rate or otherwise”.
Taking each of these assertions separately, first, it appears that the statement that the assets are insufficient to meet the obligations of the estate is clearly false. Under no theory could it be claimed that the funeral expenses and expenses of administration and preferred claim of the Commissioner of Social Services under section 104 of the Social Services Law could exhaust the estate. Moreover, the account also shows sufficient funds even to pay the general creditors and the *1066 executors’ commissions. The specific legacies will fail to be fully paid, however, in such circumstances.
Second, as to the evidentiary problems of the Dead Man’s Statute, so-called (CPLR 4519), the court finds no theory on which they could arise. The employees of the county do not come within the exclusion of the statute. (Fischer v City of New York, 207 Misc 528; Matter of Olson, 119 NYS2d 207 [a public assistance case]; Griggs v Renault Selling Branch, 179 App Div 845; Nearpass v Gilman, 104 NY 506.)
The third assertion regarding all-inclusive rates, unexplained, has no relation to proof of disbursed contract services. No claim is made in this case for county home or infirmary care in which such questions might arise.
If any grounds for settlement are indicated in the record insofar as the county is concerned, they would be restricted to so-called "nuisance” values or trial expenses, bearing no relation to the amount of the settlement. The county would be making its proof with salaried personnel, including counsel and such expenses would be minimal for the purposes of their being settled or compromised.
The rule that compromises are not subject to inquiry as to whether the claim is just or unjust, but merely as to whether it is disputed, for the purposes of upholding the compromise is not applicable to municipal corporations. (See 17 McQuillan, Municipal Corporations, § 48.17, p 124.)
As to the power of the court to review the settlement, the court finds little difficulty with this issue. SCPA 2211 (subd 1) gives the court when passing upon a petition for judicial settlement power to "make such order or decree as justice shall require.” SCPA 201 (subd 3) gives the Surrogate’s Court full and complete general jurisdiction in law and equity to administer justice in all matters and to determine "any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice allows.” (See, also, SCPA 209, subd 4, conferring similar powers.)
When an executor petitions for judicial settlement of his account, the Surrogate has the power, to pass upon the propriety of all matters, including the compromise of the executor of a claim for or against the estate. In Matter of Meyer (95 App Div AD 443, affd 181 NY 562 [on opn of App Div]) the executors petitioned for judicial settlement of their accounts. The executors had compromised the claim the estate *1067 had against the partners of the deceased. The Surrogate refused to approve the compromise when the executors petitioned for judicial settlement. In upholding the Surrogate, the Appellate Division said (p 447) "Counsel for the executors contends that the Surrogate’s Court was without jurisdiction to question the settlement. We do not agree with this contention. The Surrogate’s Court has not been given equity jurisdiction to set aside assignments of claim for fraud or mistake (Matter of Randall, 152 NY 508), but this rule has no application to settlements made by the executors in administering the estate. The Surrogate’s Court is authorized to pass upon the accounts of the executors, and this authority necessarily confers jurisdiction to pass upon every item of disbursements for which the executors claim they should be allowed.” In Matter of Hidden (243 NY 499), it was held proper for the court to pass upon wrongdoing even though no objections were filed. In Matter of Melzak (153 Misc 600, 605) the court stated: "Every default is complete as to each item or allegation to which no objection is interposed, and as to it the account stands proved pro confesso except as far as it may be patently contrary to law.” It would be demeaning to any court to say that it may not move to protect the public interest to avoid patent illegality, or to allow an unconstitutional result through its failure to act.
In acting through agents, a public authority can be deceived as to a fact, can be uninformed as to a situation, or can otherwise act in a manner which creates a result which is obviously against public policy and can do so though no willful misconduct has taken place. In this case, the court finds that the stipulation of settlement and compromise, in the light of ultimate facts of the account, is based upon false information and error of fact, is illegal, unauthorized and results in a gift of a substantial sum of public money to a private charity in violation of section 1 of article VIII of the Constitution of the State of New York. This result, the court finds to be patently obvious on the papers submitted. (See 17 McQuillan, Municipal Corporations, § 48.17, p 122.)
The account, insofar as it proposes to compromise the claim of the Department of Social Services, is disapproved. Appropriate adjustment will be made to the account and an amended or supplemental account will be submitted to the court. Commissions will be allowed except that to the extent that insufficient funds remain for the payment of the claim of the *1068 Department of Social Services because of the premature payment by the executor of legacies, the shortage will be charged against the commissions of the executor.