OPINION OF THE COURT
John B. Riordan, S.
This is an application for summary judgment in a proceeding to determine the validity of a claim. The petitioner, Nassau County Department of Social Services (DSS), provided assistance to the decedent and filed a claim against his estate in the amount of $38,672.39.
The decedent, Isaac Snell, died on June 4, 1998. His daughter, Dorothy Robinson, was appointed the executrix of his estate on December 3, 1998. Prior to his death, the decedent resided in the Wedgewood Care Center, a nursing home. The decedent apparently applied for medical assistance in October of 1996, but the application was denied, presumably for excess resources. In December of 1996, the decedent transferred a one-half interest in his home to his daughter Dorothy Robinson, the two thereupon holding the property as tenants in common. As a result of the transfer, the decedent was determined to be ineligible for medical assistance until September of 1997. DSS subsequently accepted the decedent’s application for medical assistance and provided assistance from September of 1997 through June 2, 1998.
At some time during November of 1997, the decedent, Dorothy Robinson and Charles Roberts, as attorney for Dorothy Robinson, entered into an agreement with Wedgewood Care Center. In the agreement, the decedent acknowledged that he owed Wedgewood Care Center $50,798.92 for his room and board for the period of August 14, 1996 through August 31, 1997 and Dorothy Robinson committed to be jointly and severally liable for the debt. The agreement further provided that upon the closing of the sale of the home, Charles Roberts would hold $50,798.92 and disburse said funds to Wedgewood.
The house was never sold and the decedent died in June of 1998. Dorothy Robinson was appointed the executrix of her father’s estate on December 3, 1998. The executrix sold the house on December 31, 1998. One half of the proceeds from the *697 sale of the house was placed in MKM Abstract Title Company’s escrow account “subject to the claim against the estate of the Wedgewood Care Center in the amount of $54,478.92.” Seven months after the appointment of Dorothy Robinson as executrix, MKM Abstract issued a check in the amount of $56,331.92 to Wedgewood Care Center to satisfy its claim.
The Department of Social Services filed a verified claim with the Surrogate’s Court in February of 1999.
DSS moves for summary judgment on the validity of the claim. The executrix objects on the grounds that there are no estate assets against which DSS can file a claim. The executrix advances three separate theories on why there are no estate assets. First, she argues that no monies passed through the estate as the proceeds from the sale of the decedent’s one-half interest in the home were placed in the “purchaser’s title company’s escrow account and subject to the Claim Against the Estate of the Wedgewood Care Center in the amount of $54,478.92.”
Estate is defined in section 103 (19) of the SCPA as “[a] 11 the property of a decedent * * * as originally constituted, and as from time to time exists during administration.” Further, section 1-2.6 (a) of the EPTL provides that an estate may include “[t]he interest which a person has in property.” The decedent and Dorothy Robinson held the property as tenants in common. As such, no right of survivorship exists and “[u]pon the death of a tenant in common * * * his or her interest passes to his or her estate” (13 Warren’s Weed, New York Real Property, Tenancy in Common § 1.01 [4th ed]; see also Matter of Schlesinger, 22 Misc 2d 810).
Clearly, the decedent’s one half of the property that he held as tenant in common with his daughter was property of his estate. When the real property was sold, however, the proceeds from the sale were not collected by the executrix but instead paid to the title company to hold in an escrow account. Escrow is defined as a “written instrument which by its terms imports a legal obligation and which is deposited by the grantor, promisor, or obligor, or against thereof, with a stranger or third party to be kept by the depositary until the performance of a condition or the happening of a certain event. * * * The escrow relationship is of a fiduciary nature, and has some characteristics of a trust” (55 NY Jur 2d, Escrows § 1, at 720). With an escrow account, the “incidents of ownership remain in the person depositing the property into escrow until the conditions of the escrow agreement are fulfilled” (55 NY *698 Jur 2d, Escrows § 9, at 730-731; see also Stanton v Miller, 58 NY 192; Alexander v Quality Leather Goods Corp., 150 Misc 577). Whether the property was held by a title company as escrowee for the executrix or by the executrix herself makes no difference as it was estate property and as such was subject to claims against the estate regardless of how the account was titled.
The executrix’s second argument requires an analysis of the rules regarding Medicaid applications, transfers of assets and incurred medical expenses. According to the respondent, the decedent engaged in proper Medicaid planning which resulted in the decedent impoverishing himself in order to receive medical assistance. When the decedent transferred one half of his home, he became ineligible to receive medical assistance for approximately eight months (42 USC § 1396p [c] [1] [E] [i]; Social Services Law § 366 [5] [d] [4]). At the time of the decedent’s application for medical assistance, his incurred medical expenses (his nursing home bills for the period when he was ineligible for medical assistance because of the transfer) were greater than the value of the decedent’s one-half interest in the house. New York allows resource “spend down” which essentially permits an individual to apply “resources that are in excess of the limit to payment of the medical bills, leaving Medicaid to cover the balance”[1] (Westmiller v Sullivan, 729 F Supp 260, 261-262). The regulations provide that an applicant for medical assistance “whose net available resources exceed the resource standards will be ineligible for [medical assistance] until he/she incurs medical expenses equal to or greater than the excess resources” (18 NYCRR 360-4.8 [b]). The medical expenses must be viable in that the provider must be seeking payment (NY St Dept of Social Servs Admin Directive 91-ADM-17, June 7, 1991). Further, the applicant “does not have to spend excess resources * * * before Medical Assistance will be authorized to pay bills above the amount of the applicant’s liability” (id.). When the value of the decedent’s interest in the home was less than his incurred medical expenses, he was eligible for medical assistance, regardless of whether he actually paid for the incurred medical expenses.
The executrix argues that by asserting a claim against the estate of the decedent, DSS is not acting in compliance *699 with its own Medicaid eligibility rules and therefore the claim against the estate is not valid. The eligibility rules for Medicaid are “not congruent with [the Department of Social Services’] right to recover after a recipient’s death” (Matter of Rhodes, 148 Misc 2d 744, 746). Thus, a home can be an exempt asset for purposes of Medicaid eligibility but if the home is part of the recipient’s estate, DSS has a right of recovery against the home (Matter of Rhodes, supra; Matter of Rapalje, 73 Misc 2d 16; Crabb v Mager, 66 AD2d 20). The right to recover for medical assistance from an individual’s estate is mandated by federal and state law “[i]n the case of an individual who was 55 years of age or older when the individual received such medical assistance” (42 USC § 1396p [b] [1] [B] [i]; Social Services Law § 369 [2] [b] [i] [B]). The only limitation on recovery is where the recipient was younger than 55 when he received medical assistance or where the recipient was survived by a spouse, child under the age of 21 or blind or disabled child (42 USC § 1396p [b] [2]; Social Services Law § 369 [2] [b] [ii]). As the decedent was over the age of 55 when he received assistance and was not survived by a spouse, child under the age of 21 or blind or totally disabled child, recovery against his estate is mandated.
The executrix’s final argument is that her payment to Wedge-wood Care Center leaves no estate assets. Surrogate’s Court Procedure Act provides that “[e]very fiduciary must proceed with due diligence to pay the debts of the decedent, [after the payment of funeral expenses and expenses of administration,] according to the following order: (a) [d]ebts entitled to preference under the laws of the United States and the state of New York” (SCPA 1811 [1], [2] [a]). Social Services Law, in turn, sets forth that in all claims of the public welfare official for care rendered, the public welfare official is deemed a preferred creditor (Social Services Law § 104 [1]). Further, a “county social services official may assert a claim against an estate for the full amount of the care of a decedent * * * [and] as to such claims, the commissioner is a preferred creditor”[2] (Matter of Andrus, 85 Misc 2d 1062, 1064; Matter of Bender, NYLJ, Jan. 27, 1995, at 27, col 1).
When a claim is not presented within seven months of the date of the issue of letters, “the fiduciary shall not be chargeable *700 for any assets or moneys that he may have paid in good faith in satisfaction of any lawful claim[]” (SCPA 1802). Here, two claims were presented to the fiduciary within seven months and the executrix opted to pay one claim over another. The executrix is “duty bound to act impartially, with due respect to the rights of all creditors and may not grant a preference which is contrary to the applicable statute” (Matter of Fisch, 58 Misc 2d 193, 199).
The decedent’s one-half interest in the home was part of his estate and DSS properly filed a claim against the estate. The DSS claim had priority over the claim of Wedgewood Care Center. The executrix acted at her peril when she paid the claim of Wedgewood leaving the estate without sufficient assets to pay DSS. There is no issue of triable fact and summary judgment is granted to the petitioner (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395). The executrix is surcharged $38,672.39, the amount of DSS’ claim (Matter of Swaab, 40 Misc 2d 767; Matter of Fisch, supra).

. Federal law allows the spend down of excess income but is silent with regard to resource spend down (42 USC § 1396a [a] [17] [D]). States, however, have the discretion to use a resource spend down (Westmiller v Sullivan, 729 F Supp 260; Hession v Illinois Dept, of Pub. Aid, 129 111 2d 535, 444 NE2d 751).

. If the nursing home had obtained a judgment against the decedent and docketed the judgment, the claim of DSS would have been “subservient to a creditor with a prior specific lien” (Matter of Pierce, 106 AD2d 892, 892, lv denied 64 NY2d 609).