JAMES E. HALEY vs. COMMISSIONER OF PUBLIC WELFARE
(and three companion cases[1]).

Suffolk. January 9, 1985. — April 9, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Administrative Law*, Agency's interpretation of statute. *Medicaid*. *Public Welfare*, Medical assistance benefits.

Where Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396p
(1982), did not preclude utilization by the Department of Public Welfare
of a so-called "resource spend down," allowing the department to offset
the excess resources of an individual applying for Federal medical assist-
ance benefits against the individual's incurred medical expenses, and
where G. L. c. 118E, § 10(3), required the department, in determining
eligibility, to exempt a certain amount of an individual's resources, the
department was required to use a resource spend down to calculate the
resources available to the plaintiffs in determining their eligibility for
retroactive medical assistance benefits. [472-478]

CIVIL ACTIONS commenced in the Superior Court Department
on May 18, June 29, and August 4, 1981, respectively.

Each case was heard on a master's report by *George W.
Cashman*, J., sitting under statutory authority.

CIVIL ACTION commenced in the Superior Court Department
on December 8, 1981.

The case was heard by *Robert A. Mulligan*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*David Norris* (*Stephen G. Carreiro* with him) for Leon
Moreau.

*Peter V. Kent* for Beth Israel Hospital (*Gerald A. Hamelburg*
for James E. Haley, with him).

---

[1] Beth Israel Hospital *vs.* Commissioner of Public Welfare; Beth Israel
Hospital *vs.* Commissioner of Public Welfare; and, Leon Moreau, guardian,
*vs.* Commissioner of Public Welfare.

*Kim E. Murdock*, Assistant Attorney General, for Commissioner of Public Welfare.

NOLAN, J. The plaintiffs in this consolidated appeal seek relief from adverse judgments entered in the Superior Court.[2] Each plaintiff applied to the Department of Public Welfare (department) for retroactive medical assistance (MA) benefits. The department denied the plaintiffs' requests because it determined that each plaintiff had access to resources in excess of $2,000, the allowable resource limitation for individuals seeking MA benefits. 106 Code Mass. Regs. § 505.110 (1983). Pursuant to G. L. c. 30A, § 14, the plaintiffs sought judicial review of the department's actions. The Superior Court affirmed the department's determinations. The plaintiffs filed a notice of appeal to the Appeals Court. We transferred these cases to this court on our own motion. We reverse and remand the cases.

Medical assistance is a cooperative Federal and State program which provides payment for medical services to eligible individuals and families. See 106 Code Mass. Regs. § 501.200 (1983). Title XIX of the Social Security Act authorizes the MA program. 42 U.S.C. §§ 1396-1396p (1982). In order to receive Federal funding, the State program must be approved and meet all the requirements of Title XIX and the implementing regulations. 42 U.S.C. § 1396. See *Harris* v. *McRae*, 448 U.S. 297, 301 (1980); *Sargeant* v. *Commissioner of Pub. Welfare*, 383 Mass. 809, 815 (1981). The State may elect to provide benefits to medically needy individuals. See *Tinkham* v. *Department of Pub. Welfare*, 11 Mass. App. Ct. 505, 506-507 (1981). Such individuals may have sufficient income and resources for their basic maintenance but not for medical care costs. S. Rep. No. 404, 89th Cong., 1st Sess., reprinted in 1965

---

[2] Haley and Beth Israel Hospital appeal from judgments in the Superior Court in Suffolk County confirming the special master's reports which recommended affirming the decisions of the Department of Public Welfare (department). Moreau appeals from a judgment in the Superior Court in Bristol County affirming the department's decision.

In this opinion both individual applicants for medical assistance and those applying on behalf of individuals are referred to as plaintiffs.

U.S. Code Cong. & Ad. News 1943, 2014. Massachusetts has chosen to provide such benefits. G. L. c. 118E, § 1. The department administers the program in the Commonwealth. G. L. c. 118E. Eligibility is based on an individual's available income and resources. G. L. c. 118E, §§ 5 and 10. 106 Code Mass. Regs. §§ 505.000-505.470 (1983). An individual may have available resources of $2,000 and remain eligible for MA benefits. G. L. c. 118E, § 10 (3). 106 Code Mass. Regs. § 505.110. An eligible individual is entitled to payment of care and services furnished "during the three months immediately prior to the month in which he filed his application," if the individual would have been eligible during that period had he applied. G. L. c. 118E, § 14, as appearing in St. 1973, c. 1210, § 28.

The major issue which controls resolution of this dispute is whether a "resource spend down" should be used to calculate available resources.[3] Utilization of a resource spend down would require the department to offset an individual's incurred medical expenses against any resources in excess of the eligibility limits. The statutes and regulations provide for application of the spend down principle to income eligibility determinations. G. L. c. 118E, § 10. 106 Code Mass. Regs. § 338.080. See 42 U.S.C. § 1396a(a)(17); 42 C.F.R. § 435.831 (1984). On appeal, the plaintiffs argue that the State statutes require and the Federal statutes allow for a resource spend down. Furthermore, the plaintiffs assert that neither the Federal nor State regulations prohibit a resource spend down. Therefore, the plaintiffs claim that the department erroneously denied them benefits by determining their accessible resources without utilizing a spend down. The department argues that the MA program in G. L. c. 118E must comply with Federal interpretations of Title XIX. The Health Care Financing Administration (HCFA) of the United States Department of Health and Human Services (HHS) is responsible for administering the program for

---

[3] The department argues that the plaintiffs did not raise below the issue whether the interpretation of G. L. c. 118E would require a resource spend down. We disagree. A fair reading of the record indicates that this issue was properly raised.

the Federal government. The HCFA issued in August of 1980 a medicaid action transmittal which interpreted Title XIX and applicable regulations as precluding a resource spend down. Therefore, the department argues, it is precluded from determining available resources through utilization of spend down principles. For the reasons stated below, we conclude that a resource spend down is the proper method of calculating available resources in determining an individual's eligibility for MA benefits.

We briefly summarize the relevant facts concerning each plaintiff as found in the record.

1. *James E. Haley.* Haley was a single fifty year old disabled man who resided with his mother. Carney Hospital admitted him on January 24, 1981. Haley applied for MA benefits on March 24, 1981, requesting payments retroactive to January 24, 1981. At the time of application, Haley had a bank account balance of $3,045.72. His mother's name also appeared on the account. His hospital bills then exceeded $11,000. On April 17, 1981, Haley withdrew $2,000 in assets from his account which he used in part payment of medical expenses. The department established Haley's eligibility for MA benefits as of May 7, 1981.[4] On appeal, the department's division of hearings and the Superior Court upheld the department's action.

2. *Leon Moreau, guardian of the estate of Mary Verona.* The Probate and Family Court for Bristol County appointed Leon Moreau as the temporary guardian of Mary Verona on

---

[4] The decision of the division of hearings notes that Haley had income up to May 7, 1981. The income in excess of eligibility limits was only $112.25. This excess would properly be reduced through the applicable income spend down provisions. There is no indication why MA benefits were not approved as of April 17, 1981, when his resources actually dropped below the eligibility limits. We note that, had the department applied both a resource and income spend down, the incurred medical expenses apparently were sufficient to absorb both the excess resources and income. Under the application of a resource spend down, Haley would have been retroactively eligible for payment of services since his admission on January 24, 1981.

March 23, 1981, effective retroactively to March 6, 1981.[5] Mary Verona, eighty-five years of age, received social security income (SSI) and MA benefits until November 30, 1980. These benefits were then terminated due to an SSI overpayment of $819.40. Verona was admitted to the hospital on January 31, 1981. Verona's hospital expenses from January 31, 1981, through June 15, 1981, totaled $17,517.31.

On July 3, 1981, Moreau applied to the department for retroactive MA benefits for Verona. At the time, Verona owned assets totalling $2,497.12. Moreau transferred an amount of Verona's assets to meet her obligations on June 28, 1981. This transfer reduced her assets below $2,000. On July 29, 1981, the department denied the July 3, 1981, application for retroactive MA benefits on the basis that Verona's assets exceeded the $2,000 eligibility limit. The department approved MA benefits for Verona effective June 28, 1981, the date on which the assets were reduced below the eligibility limit.

Moreau appealed the department's determination. In a decision dated October 16, 1981, an appeals referee of the department determined that Verona's liabilities of $18,337.83 (hospital expenses plus the $819.40 SSI overpayment) canceled out her $497.12 excess assets. The referee's decision approved Verona's application for retroactive MA benefits. The Commissioner of the department (Commissioner) authorized a rehearing of this case on October 27, 1981. The director of the division of hearings (director), after rehearing, issued an order denying Verona retroactive MA benefits because Verona had excess assets until June 28, 1981. The director ruled that the referee erroneously had applied a resource spend down to determine eligibility.

3. *Beth Israel Hospital.*[6]

a. *Mildred Harriman.* On December 23, 1980, the Brookline health department evicted Mildred Harriman and the other resi-

[5] In his memorandum of decision, the Superior Court judge stated that June 9, 1981, was the date of the appointment of the permanent guardian. There was no lapse between the period of the permanent and temporary guardianship appointments.

[6] Beth Israel Hospital filed applications for MA benefits on behalf of Mildred Harriman and Dorothy Hurley pursuant to G. L. c. 118E, § 8. This

dents of a rooming house at 1415 Beacon Street. Initially, the health department placed Harriman in Longwood Hospital. She was transferred to Beth Israel Hospital (hospital) on December 30, 1980. At the time, Harriman was confused and unable to provide adequate information. Sometime after December 24, 1980, and prior to February 3, 1981, the health department discovered thirteen uncashed social security checks dating back over three years amongst Harriman's belongings. The health department had difficulty cashing these checks. The checks totaled $2,300. Harriman had $912.49 in a bank account. On February 3, 1981, the uncashed checks were deposited into her bank account. Concurrently, Harriman authorized a check to be made out to the hospital for $1,400.

On April 2, 1981, the hospital filed an application with the department for retroactive MA benefits on behalf of Harriman. The department had denied a previous application filed January 6, 1980, due to Harriman's excess resources. The April application requested MA benefits retroactive to January 20, 1981. The department approved the application retroactive to February 3, 1981. This was the date that Harriman's excess resources were spent down to below the eligibility limit. The hospital filed a timely appeal. The appeals referee approved the department's determination of Harriman's eligibility.

b. *Dorothy Hurley.* The hospital admitted Dorothy Hurley on August 22, 1980. Hurley suffered from chronic psychosis and dementia. On October 9, 1980, the hospital filed an application for MA benefits with the department on Hurley's behalf. Because of her condition, hospital employees were unable to elicit from Hurley the necessary financial information pertinent to her eligibility. The department also had difficulty confirming any financial eligibility information. On December 31, 1980, the department denied this application because "it was over 60 days old."

section authorizes an institution which furnishes medical services under G. L. c. 118E, to make an application for, or to intervene if an application is made by, an individual. The institution is entitled to the same notice, hearing, and appeal rights as the applicant. G. L. c. 118E, § 8.

Sometime prior to February 13, 1981, the hospital received information that Hurley had a brother living in California. On February 13, 1981, the Probate and Family Court for Suffolk County appointed Edward D. Hurley as his sister's temporary guardian retroactive to December 18, 1980. The hospital filed a timely appeal of the department's denial of MA benefits to Hurley on February 20, 1981. Sometime prior to March 6, 1981, Mr. Hurley determined that his sister had assets totalling $3,084.08. On March 16, Mr. Hurley submitted a check for $1,084.08 from Dorothy Hurley's account to the hospital in payment of medical expenses.

After a hearing, the department's appeals referee determined that the department incorrectly denied Hurley's application on the basis that it was received over sixty days prior to the denial. The referee, however, determined that Dorothy Hurley was not harmed by this action. Dorothy Hurley had $3,084.08 in assets until March 16, 1981, thereby preventing her being eligible for MA benefits. The referee was not persuaded by the fact that Hurley was not lucid enough to report the amounts and locations of her bank accounts.

*G. L. c. 118E.* The plaintiffs argue that, even if Federal law does not allow the utilization of a resource spend down, the Massachusetts statutory scheme independently requires use of a resource spend down. We disagree. General Laws c. 118E, § 1, establishes the MA benefits program for Massachusetts. This section "established, pursuant to *and in conformity with* the provisions of Title XIX of the Social Security Act (P.L. 89-97), a program of medical care and assistance for certain residents of the commonwealth" (emphasis added). G. L. c. 118E, § 1, as appearing in St. 1981, c. 351, § 172. The language of this section clearly indicates that the Legislature intended the MA benefits program to comply with the Federal statutory and regulatory scheme. Furthermore, St. 1969, c. 800, § 10, provides that the provisions of G. L. c. 118E are severable and that any provision "in violation of any federal rule or regulation established by the [HHS] as a condition for receiving federal funds in connection with any program administered by said department . . . shall be null and void and

such violation shall not affect or impair any of the remaining provisions." Therefore, we conclude that the department may only utilize a resource spend down if G. L. c. 118E, read in conformity with Title XIX of the Social Security Act, authorizes such a scheme. Any other result would jeopardize continued Federal contributions to this program. See 42 U.S.C. § 1396c.

*HCFA medicaid action transmittal.* In August, 1980, the HCFA issued medicaid action transmittal No. 80-58 to all State agencies administering MA programs. The transmittal stated: "the current page 6 of *ATTACHMENT 2.6-C* allows States to require a 'spend-down' of an individual's resources, by indicating that excess liquid resources can be applied to the cost of medical care. Although section 1902(a)(17)(D) of the Social Security Act provides this option with respect to income (by taking into account incurred medical expenses), neither the Act nor Federal regulations allow for such flexibility with regard to resources. We have, therefore, eliminated this option on page 6 of *ATTACHMENT 2.6-C* to correct this error and reflect Federal law and regulations." The transmittal is a guideline authorized by 45 C.F.R. § 201.3(d) (1984), which advises State agencies of the HCFA views concerning current Federal policy and interpretation of applicable statutes and regulations. See *Hernandez* v. *Blum*, 61 N.Y.2d 506, 509-510 (1984).

The department argues that this transmittal is a binding interpretation of the statutory language by the agency charged with the statute's implementation. Consequently, the department argues that it cannot utilize a resource spend down. We disagree. Although "an administrative interpretation of a statute is accorded deference," *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 204 (1981), quoting *School Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 116 (1978), interpretive rule making is not controlling upon the courts, *Daughters of Miriam Center for the Aged* v. *Mathews*, 590 F.2d 1250, 1258 (3d Cir. 1978). At best HCFA action transmittals "are simply interpretive rules." *Colorado Dep't of Social Servs.* v. *Department of Health &*

*Human Servs.*, 558 F. Supp. 337, 352 (D. Colo. 1983). An "agency may not, by interpretative rule, rewrite a position it had taken previously," when the interpretation is not supported by the statute. *Daughters of Miriam Center for the Aged, supra* at 1263. Courts previously have found such transmittals unpersuasive, especially where the interpretation results in a change from prior practice. See *Tinkham* v. *Department of Pub. Welfare*, 11 Mass. App. Ct. 505, 514-515 (1981); *Daughters of Miriam Center for the Aged, supra; Hernandez* v. *Blum, supra.*

Medicaid action transmittal No. 80-58 indicates that HCFA's earlier interpretation of the statutes and regulations allowed the use of a resource spend down.[7] The present interpretation is a clear departure from HCFA's prior view. There had been no concurrent change in the applicable statutes and regulations. We conclude that this interpretation should not be accorded great deference. We, therefore, look to the underlying statutory scheme and to the regulations duly adopted by HHS. See *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n*, 371 Mass. 705, 707 (1977).

*Authority for a resource spend down.* Initially, we express our disagreement with the department's argument that the statute clearly and unambiguously precludes a resource spend down. This argument is based on the absence of a reference to resources in the clause requiring "flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums or otherwise) incurred for medical care or for any type of remedial care recognized under State law." 42 U.S.C. § 1396a(a)(17)(D). We do not agree that this absence clearly precludes a resource spend down. This section requires that eligibility determinations "provide for reasonable evaluation of any such income

---

[7] The department argues that, even when a resource spend down was an option provided in the medicaid preprinted State plan, the department did not select that option. This argument does not prevent us from the result reached today. If the Legislature requires the use of a resource spend down under G. L. c. 118E, the department's prior action in derogation of such a requirement does not aid the department's position.

or resources." 42 U.S.C. § 1396a(a)(17)(C). The agency administering the MA benefits program must determine eligibility in a manner "consistent with the objectives of this subchapter [Title XIX]." 42 U.S.C. § 1396a(a)(17)(A). If application of an income spend down is a reasonable and consistent method of evaluating income, so a resource spend down is a reasonable and consistent method of evaluating resources.

The ambiguity in the statute is also evident by the HHS's and HCFA's actions. The regulation which HHS promulgated substantially tracks the underlying statute. See 42 C.F.R. §§ 435.840, 435.841 (1984) (determination of resources must be reasonable). The major addition to the statutory language reflected in the regulations delineates the period in which the assets are counted. 42 C.F.R. § 435.845 (1984). Prior to medicaid action transmittal No. 80-58, HCFA interpreted the statute and regulations as permitting a resource spend down. We conclude, therefore, that if an application of a resource spend down is consistent with the goals of Title XIX and is reasonable, it is authorized by Title XIX.

We next determine whether utilization of a resource spend down is consistent with the Federal statutory scheme. Title XIX was "designed to liberalize Federal law under which States operate their medical assistance programs so as to make medical services for the needy more generally available." S. Rep. No. 404, 89th Cong. 1st Sess., reprinted in 1965 U.S. Code Cong. & Ad. News 1943, 2014 (hereinafter S. Rep.). To fulfil this goal, Congress sought to ensure eligibility to individuals with income and resources which prevented eligibility for other programs when the income and resources were exceeded by incurred medical costs. See 42 U.S.C. § 1396a(a)(17); S. Rep. at 2017-2020, 2147. A State must "take into account only such income and resources as (determined in accordance with standards prescribed by the Secretary) are actually available to the applicant or recipient and as would not be disregarded (or set aside for future needs)." S. Rep. at 2018. A State may not "require the use of income or resources which would bring the individual's income below the amount established as the test of eligibility under the State plan. Such action would reduce

the individual below the level determined by the State as necessary for his maintenance." S. Rep. at 2019. We conclude that, although Congress did not require use of a resource spend down, such use is a reasonable method of evaluating resources.[8]

Absent a properly promulgated regulation, "to the extent that an agency determination involves a question of law, it is subject to de novo judicial review." *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974). Cf. *Borden, Inc.* v. *Commissioner of Public Health*, 388 Mass. 707, 720-724 (1983). We, therefore, must determine independently whether the Legislature intended to require the use of a resource spend down. The goal of the MA benefits program is to provide coverage of medical expenses to individuals with income and resources above eligibility levels set for other assistance programs. See G. L. c. 118E, § 1. MA benefits are provided to individuals "whose income and resources are insuf-

---

[8] The reasonableness of applying a resource spend down to eligibility determinations is apparent when one examines the effect of eligibility determinations without a resource spend down. An eligible individual is entitled to three months' retroactive payment of medical expenses. G. L. c. 118E, § 14. Without a resource spend down, an individual with excess resources who is aware of the department's policy is in a better position than the average individual who is unaware of the policy. The aware individual can actually spend down his excess resources as soon as he incurs medical expenses which, absent excess resources, would be eligible for payment. Once the resources are actually absorbed, the individual is eligible for payment of medical expenses.

The paradox occurs with a less sophisticated individual or an individual who is not in a condition actually to spend down resources. Upon application to the department, this individual would be informed that, because of excess resources, medical expenses incurred in the last three months would not be eligible for payment. This result would occur regardless of how miniscule the excess resources were in comparison to the medical expenses incurred in that three-month period.

A concrete example of this absurd result is Mary Verona's situation. Verona had $497.12 in excess resources. Her hospital expenses for about a four and one-half months' period equalled $17,517.31. Common sense and simple mathematics require the conclusion that the $497.12 excess would have been absorbed in the first few days of hospitalization. However, Verona was incapable of actually spending down her resources. Therefore, the department, applying the present criteria, denied her retroactive eligibility until she actually paid out the $497.12 on June 28, 1981, thereby precluding any retroactive benefits. The unreasonableness of this result is self-evident.

ficient to meet the costs of necessary medical services." G. L. c. 118E, § 5, as amended by St. 1973, c. 1210, § 26. The Legislature intended to allow individuals to be eligible for benefits while retaining a certain level of income and personal property. G. L. c. 118E, § 10. To further this goal, § 10 provides that up to $2,000 of personal property "shall be exempt and shall neither be taken into consideration, nor be required to be applied toward payment or part payment of the cost of medical assistance available under this chapter . . . ." G. L. c. 118E, § 10 (3). Absent a resource spend down, an individual unaware of the department policy would be required to apply otherwise exempt resources to the cost of medical assistance. See note 8, *supra*. This result is clearly in derogation of G. L. c. 118E, § 10 (3). Section 13 further evidences the Legislature's determination to ensure an individual's retention of a certain level of resources. G. L. c. 118E, § 13, as amended through St. 1981, c. 351, §§ 183, 184.[9] The department's policy of determining eligibility without the application of a resource spend down does not comply with the requirement that an individual be allowed to retain a certain level of resources.

For the foregoing reasons, we conclude that the department's method of determining eligibility without a resource spend

---

[9] This amendment became effective on July 1, 1981. St. 1981, c. 351, § 299. It was not in effect for purposes of this case. However, this section is instructive of the Legislature's intent to require a resource spend down. See 1A C. Sands, Sutherland Statutory Construction §§ 22.34, 22.35 (4th ed. 1974). The amendment liberalized the prior application of this section which denied eligibility to individuals who assigned or transferred real or personal property in order to render themselves eligible for benefits. Section 13 explicitly applies a resource spend down in these instances. G. L. c. 118E, § 13, as amended through St. 1981, c. 351, §§ 183, 184. The Legislature later rewrote § 13, to clarify further the application of a resource spend down to transfer of assets situations. G. L. c. 118E, § 13, as appearing in St. 1982, c. 611, § 1. These changes indicate the Legislature's continued intent to ensure that individuals are allowed to retain a certain level of resources.

down is "not in accordance with law." G. L. c. 30A, § 14 (7)(*g*).[10] We vacate the judgments and we remand the cases to the Superior Court for action consistent with this opinion.

*So ordered.*

---

[10] In determining eligibility based on a resource spend down, the department may require an applicant actually to apply the resources to incurred medical expenses. After application of a spend down, retroactive benefits must be granted if an applicant meets all other eligibility criteria. The department may adopt reasonable regulations to implement a resource spend down.