## SANTOS RIVERA & others[1] *vs.* COMMISSIONER OF PUBLIC WELFARE.

Hampden.  January 9, 1985. — June 12, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Administrative Law,* Agency's interpretation of statute.  *Public Welfare,* Medical assistance benefits.  *Medicaid.*

Inasmuch as G. L. c. 118E, § 10 (5), requiring the exclusion of mandatory payroll deductions in calculating income eligibility of applicants for medical assistance benefits was inconsistent with Federal regulations requiring that the income eligibility of such applicants be determined in the same manner that eligibility for the categorically related cash assistance program was determined, and was, therefore, void, the Department of Public Welfare could properly consider the gross income of an applicant for medical assistance benefits with the flat $75 monthly income disregard provided by regulation, instead of deducting mandatory payments actually withheld from the applicant's income. [192-197]

Where a one-month budget period was used in making eligibility determinations respecting Aid to Families with Dependent Children, a regulation of the Department of Public Welfare providing for a six-month budget period for spend-down purposes in determining the eligibility of AFDC-related medically needy applicants violated the "same methodology" requirement of 42 U.S.C. § 1396a (a) (10) (C) (i) (III) (1982) and was, therefore, void. [197-198]

CIVIL ACTION commenced in the Superior Court Department on May 20, 1983.

The case was heard by *Raymond R. Cross,* J.

The Supreme Judicial Court granted requests for direct appellate review.

*H. Reed Witherby,* Assistant Attorney General, for Commissioner of Public Welfare.

*Steven A. Hitov* for the plaintiffs.

[1] Madeline McKenna and all others similarly situated. A Superior Court judge allowed McKenna's motion to intervene.

NOLAN, J. The Commissioner of Public Welfare appeals from a Superior Court judge's order allowing the plaintiffs' motion for summary judgment.[2] The plaintiffs individually applied to the Department of Public Welfare (department) for medical assistance (MA) benefits. Each plaintiff worked full time but did not receive any medical benefits from her employer. In determining the plaintiffs' eligibility for MA benefits, the department considered the plaintiffs' gross income. The department did not disregard the taxes and social security payments withheld from the plaintiffs' income; rather it applied a flat $75 monthly income disregard. This method resulted in a determination that each plaintiff had income in excess of eligibility levels. The department multiplied each applicant's excess income by six to determine the amount each plaintiff must pay toward incurred medical expenses (spend down amount) before she could become eligible for MA benefits during the six-month budget period. In administrative proceedings, a department appeals referee upheld the department's methodology and determination of each plaintiff's eligibility. The plaintiffs appealed to the Superior Court. On a motion for summary judgment, the judge ruled that the department had violated G. L. c. 118E, § 10 (5) (1984 ed.), by not deducting taxes and social security payments from an applicant's income when determining eligibility for MA benefits. The judge further ruled that the department's use of certain other eligibility procedures violated 42 U.S.C. § 1396a (a)(10)(C)(i)(III) (1982). Through these procedures, the department determined eligibility on a semiannual basis for applicants who, but for excess

[2] The judge also granted the plaintiffs' motion for class certification, certifying two classes. The first class consists "of all Massachusetts residents who were at the time this action was filed or are currently medically needy, working applicants for or recipients of Medicaid and who were subjected to the defendant's practice of counting their gross income for Medicaid eligibility purposes. The second class [consists] of all those Massachusetts residents who were 'AFDC-related' medically needy applicants for or recipients of Medicaid currently or at the time this action was filed . . . are subjected to the defendant's six-month spend-down requirement in order to qualify or requalify for Medicaid benefits." The department does not contest the propriety of the class certification.

income and resources, would be eligible for Aid to Families with Dependent Children (AFDC).[3] In contrast, the department determined eligibility on a monthly basis for applicants who received or were deemed to receive AFDC.[4] We granted the parties' joint application for direct appellate review. For the reasons stated below, we conclude that the department did not violate G. L. c. 118E, § 10 (5), by the methodology used in determining income for eligibility purposes but that the department's use of a six-month budget period for spend down purposes is improper.

We recently examined the MA benefits program concerning the determination of eligibility based on resource limits. *Haley v. Commissioner of Pub. Welfare,* 394 Mass. 466 (1985). This program is a cooperative State and Federal effort to pay for medical services provided to categorically and medically needy individuals.[5] Categorically needy individuals are those who receive or are deemed to receive cash assistance benefits. G. L. c. 118E, § 1 (1984 ed.). See 42 C.F.R. § 435.1(e) (1984). Medically needy individuals would be eligible for cash assistance but for excess income and resources. See G. L. c. 118E, § 1. "Such individuals may have sufficient income and resources for their basic maintenance but not for medical care costs." *Haley, supra* at 467. A person is eligible for MA benefits if his income is above cash assistance income eligibility standards but at or below MA benefits eligibility standards. 106 Code Mass. Regs. § 506.400 (1983). A person with income above MA benefits eligibility standards also is eligible if his excess income can be reduced by application of a spend down. See 106 Code Mass. Regs. §§ 506.500-506.580 (1983). Excess income is that portion of the income which exceeds the eligibility limits. 106 Code Mass. Regs. § 506.520. In applying a spend down, the individual uses the excess income to pay incurred medical expenses. See 106 Code Mass. Regs. §§ 506.540,

---

[3] AFDC-related medically needy applicants.

[4] AFDC-related categorically needy applicants.

[5] See *Haley, supra* at 467-468, 472, for a full discussion of the MA benefits program.

506.570. Once the excess income is absorbed by incurred medical expenses, the applicant is eligible for payment of any other covered medical expenses incurred during the applicable budget period. See 106 Code Mass. Regs. § 506.570.

Neither party disputes the facts of this action. The sole issue in this case concerns the propriety of the department's method of computing income eligibility for MA applicants. We briefly describe that method.

The department initiates its eligibility determination with an examination of an applicant's gross income. See 106 Code Mass. Regs. §§ 505.200, 505.210 (1983). The department converts an applicant's income to monthly amounts. 106 Code Mass. Regs. § 505.320 (1983). In AFDC-related cases, the department deducts $75 from the gross monthly income. 106 Code Mass. Regs. § 506.120(A). After computation of income disregards, 106 Code Mass. Regs. §§ 506.120 and 506.130, the department compares the "Net MA Income" with the applicable MA income standard. 106 Code Mass. Regs. § 506.400. An applicant with net income at or below the MA income standards is eligible for benefits.

"If Net MA Income is greater than the MA Income Standard, eligibility may be established on the basis of spend-down provisions." 106 Code Mass. Regs. § 506.400. In order to establish eligibility, an applicant must submit paid or unpaid medical bills which exceed his spend down liability. 106 Code Mass. Regs. § 506.540. The department uses a six-month spend down period. 106 Code Mass. Regs. § 506.510. The spend down liability is six times the excess monthly income, the amount of net MA income which exceeds eligibility standards. 106 Code Mass. Regs. § 506.520. Once the spend down liability is absorbed, an applicant "is eligible for payment of all covered medical expenses incurred during that spend-down period, other than those submitted to meet the spend down liability." The applicant also must continue to meet all other eligibility requirements during the balance of the spend down period. 106 Code Mass. Regs. § 506.570.

1. *Income disregards.* This action presents an anomalous situation where an apparent incongruity exists in the statutes

and regulations which control the income eligibility aspect of the MA benefits program. Title XIX, through a recent amendment, requires the State to use the "same methodology" to determine eligibility for MA benefits "which would be employed under the appropriate State plan [for cash assistance] to which such group is most closely categorically related." 42 U.S.C. § 1396a(a)(10)(C)(i) (amended by Tax Equity and Fiscal Responsibility Act, Pub. L. 97-248, § 137[b][8], 96 Stat. 378) (TEFRA). The plaintiffs are categorically related to AFDC recipients. In determining AFDC income eligibility, the department applies a $75 income disregard for work expenses. See 42 U.S.C. § 602(a)(8)(A)(ii) (1982). This disregard is applied to gross income. See 45 C.F.R. § 233.20(a)(6)(iii) (1984). See also *Heckler* v. *Turner,* 470 U.S. 184, 211-212 (1985) (mandatory tax withholdings encompassed in the flat sum disregard and no additional disregard for withholdings allowed). The department applies this same methodology in determining MA eligibility for AFDC-related medically needy applicants. 106 Code Mass. Regs. § 506.120. General Laws c. 118E, § 10 (5), however, states that "taxes, social security payments or, in the absence thereof, mandatory payments to a retirement system, union dues, and other reasonable and usual costs of earning wages as approved by the department; provided, however, that the latter shall be no greater than two dollars and fifty cents per week or eleven dollars per month" are exempt from income for MA purposes.

In adopting the program to provide medical assistance to medically needy individuals, the Legislature intended to maximize Federal financial participation. G. L. c. 118E, § 1. See *ABCD, Inc.* v. *Commissioner of Pub. Welfare,* 378 Mass. 327, 334-335 & n.13 (1979). To further that goal, the Legislature adopted an MA benefits program designed "to comply with the Federal statutory and regulatory scheme." *Haley* v. *Commissioner of Pub. Welfare, supra* at 472. "Furthermore, St. 1969, c. 800, § 10, provides that the provisions of G. L. c. 118E are severable and that any provision 'in violation of any federal rule or regulation established by the [HHS] as a condition for receiving federal funds in connection with any

program administered by said department . . . shall be null and void and such violation shall not affect or impair any of the remaining provisions.'" *Id.* at 472-473.

The department argues that determining MA income eligibility through the use of the additional disregards of G. L. c. 118E, § 10 (5), jeopardizes continued Federal financial participation. The plaintiffs respond that Federal law only requires the State to determine eligibility for AFDC-related MA applicants no more restrictively than for AFDC recipients; the State may treat such applicants less restrictively than AFDC recipients. The judge agreed with the plaintiffs that "nothing in [the Federal law] limits income deductions to the flat $75." The judge's conclusion was based on an erroneous belief that G. L. c. 118E (1984 ed.) enumerates the deductions from income under the AFDC plan. General Laws c. 118E pertains only to the MA benefits program. AFDC is controlled by G. L. c. 118 (1984 ed.) and applicable Federal law. See *Civetti* v. *Commissioner of Pub. Welfare,* 392 Mass. 474, 475-476 (1984); *ABCD, Inc.* v. *Commissioner of Pub. Welfare,* 378 Mass. 327, 331-333 (1979).

Basically, this dispute concerns the interpretation and effect of the "same methodology" language which appears in 42 U.S.C. § 1396a(a)(10)(C)(i)(III). This language was the result of several amendments by which Congress sought to clarify the MA eligibility requirements. Congress has experienced difficulty in conveying the purpose of the language changes to the United States Department of Health and Human Services (HHS). See H.R. Rep. No. 861, 98th Cong. 2d Sess., reprinted in 1984 U.S. Code Cong. & Ad. News 1445, 2055 (H.R. Rep. 861). As a result, Congress imposed a moratorium which required HHS to "not take any compliance, disallowance, penalty, or other regulatory action against a State during the moratorium period . . . by reason of such State's plan under Title XIX . . . being determined to be in violation of [42 U.S.C. § 1396a(a)(10)(C)(i)(III)]." Deficit Reduction Act of 1984, Pub. L. 98-369, Title III, § 2373(c), 98 Stat. 1112. Congress adopted the moratorium because HHS had "implemented [the same methodology] provision in an overly literal

fashion, without taking into account the intent of the TEFRA clarification." H.R. Rep. 861, at 2055. In its most recent statement concerning this language, Congress stated that TEFRA "amended the Medicaid statute to clarify that Congress did not intend to change the policies governing the eligibility of the medically needy from those in effect before OBRA [Omnibus Budget Reconciliation Act of 1981, Pub. L. 97-35]." *Id.*[6]

Our examination of this legislative history indicates that 42 U.S.C. § 1396a(a)(10)(C)(i)(III) requires a State to determine MA eligibility in the same manner that was used prior to the recent series of amendments. Presently, 42 C.F.R. § 435.831(a)(1) requires the department to "deduct amounts that would be deducted in determining eligibility under the State's AFDC plan" in determining income eligibility for AFDC-related MA applicants. To do otherwise could jeopardize Federal financial participation.[7] See 42 C.F.R. § 435.1007 (1984). The same requirements existed prior to the amendments. Compare 42 C.F.R. § 435.831 (1978); 42 C.F.R. § 435.1007 (1978).[8] General Laws c. 118E, § 10 (5), as

---

[6] OBRA amended 42 U.S.C. § 1396 to give the States "certain flexibility in structuring their medically needy programs." H.R. Rep. 861, at 2054. Prior to this amendment, States could employ less restrictive income and resources eligibility standards or methodologies than those used in the similar cash assistance programs. *Id.* After OBRA, HHS issued regulations which allowed the "States to impose more restrictive standards and methodologies than under previous law." *Id.* at 2055. See *Hogan* v. *Heckler,* 597 F. Supp. 1106, 1110-1111 (D. Mass. 1984). In further amending 42 U.S.C. § 1396 by TEFRA, Congress attempted to "make[ ] clear that [HHS] had no authority to alter the rules that applied before September 30, 1981, with respect to medically needy income levels, medically needy resource standards, and the methodology for treating medically needy income and resources." *Hogan* v. *Heckler, supra* at 1111, quoting H.R. Rep. No. 97-757, Part I, 97th Cong. 2d Sess. 13 (1982).

[7] We recognize that the moratorium prevents HHS from imposing any sanction on a State for not using MA eligibility standards which are more restrictive than the related cash assistance program. We find it unnecessary to examine the moratorium to determine to what extent the State may use a less restrictive standard.

[8] The department notes that 42 C.F.R. § 435.1007 refers to 42 C.F.R. § 436.831, and contends that this is a typographical error. We need not view this reference as error because 42 C.F.R. §§ 435.831 and 436.831 contain the same pertinent language.

enacted, reflected the income disregards which were then applicable to AFDC recipients. See 42 U.S.C. § 602(a)(7) (1976); 45 C.F.R. §§ 233.20(a)(7)(i), 233.20(a)(11)(v)(a) (1978) (disregard for work related expenses). Cf. 45 C.F.R. §§ 233.20(a)(7)(i), 233.20(a)(11) (1984) (flat $75 disregard and no disregard for work related expenses). See also *Heckler* v. *Turner,* 470 U.S. 184, 193-204 (1985). This indicates that the Legislature intended to provide the same treatment for medically needy MA applicants as was provided categorically related applicants.

In determining that the department improperly disregarded G. L. c. 118E, § 10 (5), the judge relied on a recent amendment to § 10. However, he did not consider the effect of St. 1969, c. 800, § 10. The judge determined that the Legislature's amendment to G. L. c. 118E, § 10, subsequent to OBRA which changed the AFDC income disregards, indicated a legislative choice "to go beyond the income disregards of the federal law by specifying additional deductions under c. 118E." We disagree. Once Congress enacted the flat $75 income disregard for AFDC applicants, G. L. c. 118E, § 10 (5), was in conflict with 42 C.F.R. §§ 435.831 and 435.1007. Section 10 (5), therefore, became null and void. St. 1969, c. 800, § 10. As § 10 (5) was null and void at the time, the Legislature did not provide for additional disregards by reenacting § 10 (5) in its 1982 amendments.

Statute 1969, c. 800, § 10, clearly indicates that the Legislature intended G. L. c. 118E to comply with "any Federal rule or regulation established by [HHS] as a condition for receiving federal funds in connection with [the MA] program." We note that this case is distinct from *Haley* v. *Commissioner of Pub. Welfare,* 394 Mass. 466 (1985). In *Haley,* we were faced with an interpretative opinion of an administrative body. *Id.* at 473. That interpretation was a clear departure from the agency's prior view and, therefore, not entitled to great deference. *Id.* at 474. In this action, there exists clear statutory language which is reflected in duly adopted regulations. See 42 U.S.C. § 1396a(a)(10)(C)(i); 42 C.F.R. § 435.831. As our previous discussion indicates, the regulations, even with the

recent amendments, require the department to determine MA income eligibility in the same manner that the department uses to determine eligibility for the categorically related cash assistance program. We conclude, therefore, that pursuant to St. 1969, c. 800, § 10, G. L. c. 118E, § 10 (5), is null and void. The department's regulation properly applies the flat $75 disregard to income eligibility determinations for the categorically related group.

2. *Six-month budget period.* The department asserts that the judge erred in concluding that the six-month budget period for spend down purposes violated the "same methodology" language of 42 U.S.C. § 1396a(a)(10)(C)(i)(III). The department argues that the categorically related income eligibility determinations do not involve a spend down; therefore, there is no comparable methodology for the department to match in applying spend down provisions. The department further argues that Federal regulation explicitly allows a six-month budget period. The United States District Court for the District of Massachusetts recently rejected similar arguments offered by HHS to support the application of the six-month spend down budget period to MA applicants categorically related to Supplemental Security Income (SSI) recipients. *Hogan* v. *Heckler,* 597 F. Supp. 1106, 1110-1113 (D. Mass. 1984).[9]

In *Hogan,* the District Court recognized that "the length of the spenddown period is part of the methodology for evaluating income eligibility." *Id.* at 1110. We agree. There is no distinction between the spend down provisions as applied to AFDC-related MA applicants and SSI-related MA applicants. See 42 C.F.R. § 435.831. The analysis in *Hogan* applies equally to this case. Although eligibility determinations for the categorically needy do not involve spend downs, such determinations do require the use of a budget period. See 42 U.S.C. § 1396a(a) (10)(A)(i); 42 C.F.R. §§ 435.110, 435.120; 42 U.S.C.

---

[9] An appeal of this case is pending in the United States Court of Appeals for the First Circuit. We recognize that we do not have the benefit of that court's decision on this issue. We have determined, however, that our resolution of the instant dispute is necessary to prevent prejudicial delay to these parties.

§ 1382(c)(1) (one-month budget period for SSI); 42 U.S.C. § 602; 45 C.F.R. § 233.31 (1984) (one-month budget period for AFDC). Calculating the spend down amount over a six-month prospective period results in the use of a six-month budget period for a portion of the income eligibility determinations for MA benefits. Furthermore, utilization of the six-month spend down period treats medically needy applicants more restrictively than their categorically needy counterparts. The medically needy applicant must weigh six months of putative income against incoming medical bills where a categorically needy individual need only account for actual income. Congress clearly intended to prevent the States from pursuing such more restrictive treatment of the medically needy. H.R. Rep. 861, at 2055-2056. We conclude that the department must use a one-month budget period for spend down purposes.

For the reasons set forth above, we reverse that portion of the judgment which determined that the department violated G. L. c. 118E, § 10 (5), through the application of a flat $75 disregard in determining AFDC-related MA income eligibility, and we affirm that portion of the judgment which determined that the department's use of a six-month budget period for spend down purposes violated 42 U.S.C. § 1396a(a)(10)(C) (i) (III). We remand this matter to the Superior Court for further action consistent with this opinion.

*So ordered.*