Elnora WESTMILLER, by her attorney in fact George A. HUBBARD, and Virginia F. Cranston, as Administrator of the Estate of Virginia A. Cranston, individually, and both on behalf of all other persons similarly situated, Plaintiffs,

v.

Louis W. SULLIVAN, Secretary, Department of Health and Human Services;[1] Cesar Perales, Commissioner, New York State Department of Social Services; W. Burton Richardson, Commissioner, Monroe County Department of Social Services; and Dane R. Sprague, Commissioner, Genesee County Department of Social Services, Defendants.

Civ. No. 87–1166L.

United States District Court, W.D. New York.

Jan. 2, 1990.

1. Louis W. Sullivan succeeded Otis R. Bowen as Secretary of Health and Human Services and, therefore, he should be substituted as defendant. Fed.R.Civ.P. 25(d)(1).

Rene Reixach, Rochester, N.Y., for plaintiffs.

Charles Pilato, Rochester, N.Y., for Louis W. Sullivan.

Eugene Welch, Rochester, N.Y., for Cesar Perales.

James Robinson, Rochester, N.Y., for W. Burton Richardson.

David Metzler, Batavia, N.Y., for Dane R. Sprague.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

This case, although it turns on this Court's interpretation of a single section buried deep in the vast, labyrinthian Medicaid Act, 42 U.S.C. § 1396 et seq., affects a great many of those citizens receiving Medicaid assistance. Plaintiffs, suing on behalf of themselves and all others similarly situated,[2] ask this Court to enjoin the Secretary of the United States Department of Health and Human Services ("Secretary") from enforcing an interpretation of the Medicaid Act that forbids states participating in Medicaid from using a "resource spend-down" to determine eligibility for benefits. Pending before me are the parties' cross motions for summary judgment. The facts of this case are uncontroverted; hence, all that remain are questions of law.

## FACTS

Title XIX of the Social Security Act, known as the Medicaid Act and codified at 42 U.S.C. § 1396 et. seq., creates a jointly financed federal-state program which provides financial assistance to those without sufficient resources to pay for health care. In order for a state to receive federal reimbursement for funds provided to these individuals, it must submit for approval by the Secretary a "plan," on federally-provided preprinted forms, detailing the structure of its Medicaid program. This plan includes, inter alia, methods for determining Medicaid eligibility.

The record shows that for approximately 14 years, from 1966, when Congress enacted Medicaid, until 1980, states had the option to determine eligibility for assistance by means of a "resource spend-down." The New York State plan, like many others, provides that an applicant qualifies for assistance only if her income and resources for a given month do not exceed a certain amount, known as the "asset disregard." In many cases, however, while an applicant may possess resources exceeding the monthly limit by a few hundred dollars, her medical bills for that month may total thousands of dollars beyond her available assets. A resource spend-down would allow this individual to apply the resources that are in excess of the limit to payment of the medical bills, leaving Medicaid to cover the

---

**2.** This action was originally certified as a class action by stipulation and order filed November 24, 1987. By subsequent stipulation and order, docketed on April 24, 1989, the class now is comprised of

All persons in New York who have applied for Medicaid as medically needy for months prior to March, 1989, and who had for the month or months for which such coverage was sought, resources in excess of those allowed for Medicaid eligibility in New York but whose incurred medical bills exceeded the amount of such excess resources.

balance. In other words, the applicant is allowed to "spend-down" to the limit, thereby becoming eligible for assistance.

HHS Action Transmittal 80–58 ("Transmittal"), issued in August, 1980, for the first time announced the Secretary's new position that while the Medicaid Act, at 42 U.S.C. § 1396a(a)(17)(D), allows expressly for spend-down of excess *income*, neither this section nor the rules promulgated thereunder allow for spend-down of excess *resources*. The Secretary therefore denied states the option to include a resource spend-down provision in their plans.

Prior to 1980, New York had opted to apply such a resource spend-down procedure in determining Medicaid eligibility. In order to comply with the Transmittal, effective January, 1982, New York discontinued its prior practice and precluded use of the resource spend-down.

The named plaintiffs in this action are two applicants for Medicaid whose requests for assistance were denied because their resources exceeded the allowable limits. Nevertheless, in both cases, their incurred medical expenses for the months in which coverage was denied greatly exceeded their available assets.

Plaintiffs contend that the Secretary's enforcement of the Transmittal, preventing states from employing a resource spend-down, violates the Medicaid Act and should therefore be enjoined.[3] In support of their position, plaintiffs point to 14 years of uninterrupted federal toleration of and acquiescence in the resource spend-down procedures utilized by New York and other states. Plaintiffs also rely on federal legislation[4] passed in 1988 amending the Medicaid Act to permit use of such a resource spend-down in determining Medicaid eligibility, retroactive to October, 1982.

The Secretary focuses his argument on the "plain language" of the Medicaid Act, which he reads to impliedly forbid utilization of a resource spend-down in determining eligibility. In essence, the Secretary contends that since Congress expressly provided for *income* spend-down, if it had intended states to employ *resource* spend-down it would have said so.

Much water has passed under the bridge since this lawsuit was begun. In response to Congress' July 1988 enactment of the MCCA, New York reinstituted its resource spend-down procedure in March 1989, intending to make it retroactive to October 1982. The Court held this decision in abeyance for some time in the hope that the Secretary might promptly rule on New York's plan and therefore render this case moot. Federal approval, however, of this amendment to the state plan is still pending, and it apparently may be months or even *years* before there is any action. Such approval concededly might render plaintiffs' motion moot,[5] although the Secretary has recently expressed to this Court his position that the MCCA makes a state resource spend-down provision retroactive only as far back as the first day of the quarter in which it was first enacted by a state. Therefore, the Secretary asserts that for New York's new resource spend-down provision to be retroactive to October 1982, it would have to have been part of the state's approved plan as of that date, which it was not. It thus appears that HHS' "approval" of the state's March 1989 amendment retroactive to October 1982 is questionable.

---

**3.** Although plaintiffs also assert causes of action against the Commissioners of the New York State, Monroe County and Genesee County Departments of Social Services, these defendants agree with plaintiffs' position that the Secretary's enforcement of its new "policy" is contrary to the Medicaid Act and should be enjoined.

**4.** The Medicare Catastrophe Coverage Act of 1988 ("MCCA") amended 42 U.S.C. § 1396a(a)(10)(C)(i)(III) and added § 1396a(r).

By stipulation and order filed September 14, 1988, plaintiffs have amended their complaint and motion for summary judgment to allege that the Secretary's actions violate these sections as well as § 1396a(a)(17)(D).

**5.** On the other hand, insofar as New York discontinued use of the resource spend-down effective January 1982, and its new provision is intended to be retroactive only to October of that year, the intervening 9–month period presumably would remain at issue.

In any event, it is not necessary for the Court to rule on the retroactivity of New York's March 1989 plan under MCCA.

For the reasons discussed, *infra*, plaintiffs' motion for summary judgment is granted and the defendant Secretary is enjoined from enforcing the Medicaid Act so as to preclude the State of New York from using a resource spend-down to determine eligibility for benefits.

## DISCUSSION

### A. "Plain Language" of the Statute

■ The Secretary asserts that the Transmittal accords with the "plain language" of the Medicaid Act, in forbidding states to employ a resource spend-down in determining Medicaid eligibility. The Secretary points to 42 U.S.C. § 1396a(a)(17)[6] as specifically requiring states to utilize an *income* spend-down. That Congress included this specific reference but omitted any mention in this section of a resource spend-down, in the Secretary's view, provides "persuasive evidence that no resource spend-down was intended." (Secretary's Brief at 9). This Court does not find that the plain language of the statute supports the Secretary's interpretation, but rather agrees with plaintiffs that the Transmittal violates at least the spirit, if not the letter of the Medicaid Act. *See Haley v. Commissioner of Public Welfare*, 394 Mass. 466, 476 N.E.2d 572 (1985).

Although the Medicaid Act does not expressly mention a resource spend-down, it is clear from other sections of the Act and from the legislative history that the states have discretion in utilizing such a spend-down in determining eligibility, consistent with the stated purposes of the Medicaid Act.

First of all, it is clear that the states have a certain degree of discretion in determining eligibility standards.

42 U.S.C. § 1396a(a)(17)(A) requires that state plans for medical assistance "include reasonable standards ... which (A) are consistent with the objectives of this title." The objectives of the Medicaid Act clearly are set forth in § 1396, which provides for appropriation of funds. This section allows for appropriation of funds "[f]or the purpose of enabling each state, as far as practicable under the conditions in such state, to furnish (1) medical assistance on behalf of families ... whose income and *resources* are insufficient to meet the costs of necessary medical services." [Emphasis added] In addition, § 1396a(a)(19) provides in relevant part that state plans must "assure that eligibility for care and services under the Plan will be determined ... in a manner consistent with simplicity of administration and the best interests of the recipients."

This language in the statute certainly suggests that the individual states, depending on the peculiar circumstances of that state, can fashion a plan for medical assistance to families whose income and resources are "insufficient" to pay for necessary medical expenses. In light of this statutory language and the broad purpose of the Act, absent an expressed statutory prohibition against using a resource spend-down, it was certainly reasonable for states to include the resource spend-down procedure as part of their eligibility requirements.

The legislative history of the Medicaid Act is also telling with respect to Congress' intent to allow for a resource spend-down. The report of the Senate Finance Committee makes explicit and lengthy reference to the need for an income spend-down. The Committee wrote:

---

**6.** Section 1396a(a)(17) reads, in pertinent part: "[a state plan must] include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this title, (B) provide for taking into account only such income and resources as are ... available to the applicant or recipient and ... as would not be disregarded (or set aside for fu-

ture needs) in determining his eligibility for such aid, assistance or benefits, (C) provide for reasonable evaluation of any such income or resources, and (D) ... provide for flexibility in the application of such standards with respect to income by taking into account ... the costs incurred for medical care or for any other type of remedial care recognized under State law."

The state may require the use of all the excess income of the individual toward his medical expenses, or some proportion of that amount. In no event, however, with respect to either this provision or that described below with reference to the use of deductibles for certain items of medical service, may a State require the use of income *or resources* which would bring the individual's income below the amount established as the test of eligibility under the State plan. (Emphasis added)

Senate Report 404 *reprinted in* 1965 U.S. Code Cong. & Admin.News 1943, 2019.

This language indicates clearly to the Court Congress' intent to allow the states to utilize a resource spend-down as well as an income spend-down.

The Court finds that the Secretary's position is indeed contrary to the language of the Act, and is inconsistent with the objectives of the statute.

The Illinois Supreme Court rejected an argument similar to the Secretary's "plain language" position in *Hession v. Illinois Department of Public Aid*, 129 Ill.2d 535, 136 Ill.Dec. 65, 544 N.E.2d 751 (1989). *See also, Foley v. Suter*, No. 83 C 4736, slip op. at 2 (N.D.Ill.1988) (approving magistrate's finding, (1986 WL 20891 [N.D.Ill.1986]), that statutory references to income spend-down do not imply intent to forbid resource spend-down).

In *Hession*, the Department of Public Aid argued, as does the Secretary here, that express mention only of income spend-down among the requirements for a state plan impliedly excludes from that category a resource spend-down. The Illinois Supreme Court found that the failure to enumerate resource spend-down among the requirements of a state plan means simply that a state plan is not *required* to provide for resource spend-down, not that a state is precluded from using such a procedure. 136 Ill.Dec. at 71, 544 N.E.2d at 757. Noting that the "plain language" of § 1396a(a)(17) makes no mention one way or the other regarding resource spend-down, the court found that the discrepancy between the Secretary's interpretation of

that section, as evidenced by the Transmittal, and HEW's prior position allowing states to use resource spend-down, points out that the section is susceptible to varying interpretations, rather than being clear on its face. *Id.*

In further support of its ruling, the *Hession* court found that Congress' enactment of the MCCA in 1988 merely clarified, rather than changed existing law concerning the use of a resource spend-down. 136 Ill.Dec. at 69, 544 N.E.2d at 755.

The MCCA changed the language of 42 U.S.C. § 1396a(a)(10)(C)(i)(III) and added § 1396a(r)(2)(A), to permit states to determine eligibility for "medically needy" coverage via methodologies less restrictive than those used to determine "categorically needy" eligibility (because the resource spend-down methodology makes greater numbers of applicants eligible, it is a less restrictive method than those used to determine eligibility among the categorically needy). Prior language had required the use of the *same* methodologies.

The court in *Hession* rejected the Department's argument that statutory amendments are presumed to change, rather than clarify existing law. 136 Ill.Dec. at 69, 544 N.E.2d at 755. Instead, the court found that the legislative history showed Congress' intent to rectify HHS' prior interpretation of the "same methodologies" provision, under which the Department had prevented states from using *less* restrictive methodologies. The "same methodologies" language, the court noted, originally had been intended to prevent HHS from allowing states to employ *more* restrictive methodologies in determining medically needy eligibility. "Because the legislative history indicates that the same methodology proviso was never intended to preclude the use of less restrictive methodologies, the subsequent amendments to this section of the Medicaid Act which specifically allow less restrictive methodologies ... must be viewed as clarifying and reaffirming, rather than changing, existing law." 136 Ill. Dec. at 69–70, 544 N.E.2d at 755–56.

In *Haley v. Commissioner of Public Welfare, supra,* the Massachusetts Supreme Court also rejected the Secretary's

argument that a resource spend-down is precluded by the Medicaid Act. The Court rejected the Secretary's interpretation, found that it was not bound by such an interpretation, and ruled that a resource spend-down was a reasonable and consistent method of evaluating income and resources. The Court specifically found that although Congress did not *require* such a spend-down, its use by the State of Massachusetts was a reasonable method of determining eligibility.

Because I find the reasoning of the Illinois and Massachusetts courts persuasive, I reject the Secretary's argument that the plain language of the Medicaid Act precludes states from employing a resource spend-down in determining eligibility for medical assistance.

Plaintiffs point to 42 U.S.C. § 1396d(a) which defines "medical assistance" as meaning "payment of part or all of the cost of the following care and services ... for individuals ... whose income and resources are insufficient to meet all of such cost." As the Secretary points out, this section is merely definitional, and makes no specific mention of a resource spend-down. Nevertheless, the Court finds it to be a concise statement of the spirit underlying the statute. It strains credulity to suppose that Congress, having included this language in the Act, would intend to allow for an income spend-down, but not to assist those whose resources marginally exceed asset limitations, but are dwarfed by incurred medical expenses. *See Haley*, 394 Mass. at 474–76, 476 N.E.2d 572 (resource spend-down is reasonable method of evaluating resources, in accordance with policy underlying Medicaid Act).

B. Deference to Administrative Interpretation

■ The Secretary argues that in interpreting a statute, a court should accord

great deference to interpretations issued by the agency charged with administering the statute. *See Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Therefore, argues the Secretary, this court should defer to HHS' interpretation of the Medicaid Act, as evidenced by the Transmittal, and find that states may not utilize a resource spend-down in determining assistance eligibility.

Plaintiffs contend, and I agree, that this case presents some judicially-recognized circumstances in which administrative interpretations are not to be accorded great weight. *See Foley v. Suter, supra,* slip. op. at 2.

In deciding what deference to accord to certain of the EEOC's guidelines with respect to Title VII, the Supreme Court has ruled that the agency's interpretation was not entitled to great weight or deference when the interpretation was not made contemporaneously with enactment of the statute and when it contradicted the position which the agency had taken previously. *General Electric Co. v. Gilbert*, 429 U.S. 125, 143–44, 97 S.Ct. 401, 411–12, 50 L.Ed.2d 343 (1976); *see also Barnett v. Weinberger*, 818 F.2d 953 (D.C.Cir.1987); *Haley*, 394 Mass. at 474, 476 N.E.2d 572. The weight given an administrative interpretation depends in part "upon the thoroughness of its consideration [and] the validity of its reasoning." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161–164, 89 L.Ed. 124 (1944). Moreover, "deference can be overborne if a court finds that the agency interpretation is unreasonable because it violates the letter or spirit of the statute." *Capitano v. Secretary of Health & Human Services*, 732 F.2d 1066, 1076 (2d Cir.1984).[7]

---

7. In response to Plaintiffs' contention that enforcement of the Transmittal violates 5 U.S.C. § 553, which requires publication of substantive rules of general applicability for notice and comment before becoming effective, the Secretary maintains that since the Transmittal was an interpretive, rather than substantive rule, this procedure need not have been followed. The

Secretary's argument proves too much. Even if he is correct in characterizing the transmittal as interpretive, the court held in *Capitano*, 732 F.2d at 1075, that interpretive rulings not promulgated pursuant to the notice and comment process are not binding on the courts. *See also, Haley*, 394 Mass. at 473, 476 N.E.2d 572 (Trans-

The Transmittal involved in this case clearly falls within that category of administrative interpretations found by the Supreme Court not to be entitled to great deference. It was clearly not issued contemporaneously with enactment of the Medicaid Act, but postdated passage of the Act by approximately 15 years. Further, in interpreting the statute, the Secretary espoused a position directly contrary to the position it held for 14 straight years prior to the issuance of the Transmittal. For example, the 1966 HEW Handbook of Public Assistance, at § D–4240(A)(5) provides in pertinent part with respect to eligibility for medical assistance:

> The fact that the individual has property, reasonably valued, in excess of the state's established limit on such resources, does not arbitrarily exclude an individual from receiving medical assistance. When medical costs exceed the excess value of an available resource, the State agency may pay for medical assistance above the excess value.

Despite the Secretary's presumed knowledge of this fact, the Transmittal was issued without any accompanying explanation of the Secretary's reasons for reversing his prior, long-term interpretation of the Act. Therefore, in deciding that the Transmittal contravenes the intent behind the Medicaid Act, I accord the Secretary's interpretation little weight.

### CONCLUSION

For the above reasons, plaintiffs' motion for summary judgment is granted and defendant Secretary's motion is denied.

I find that the Secretary's Transmittal and his decision to preclude states from utilizing a resource spend-down in determining eligibility is contrary to the Medicaid Act.

In lieu of entering an order providing for specific injunctive and remedial relief, the Court directs the parties to submit, within twenty (20) days of the filing of this opinion, letter briefs addressing issues concerning the appropriate injunctive, declaratory and remedial remedies consistent with this opinion. Following these submissions, the Court will hear arguments on the matter on January 30, 1990 at 11:00 a.m.

IT IS SO ORDERED.

mittal, as example of interpretive rule making,     not binding on courts).